**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Arthur Homer SLUDER, Defendant-Appellant.**

**No. 71–1102.**

United States Court of Appeals,
Tenth Circuit.

Feb. 18, 1972.

---

Mark C. Meiering, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., and Mark B. Thompson, III, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Joseph P. Paone, Albuquerque, N. M., for defendant-appellant.

Before PHILLIPS, HOLLOWAY and McWILLIAMS, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

An indictment was returned in the United States District Court for the District of New Mexico, charging that on or about July 15, 1969, in such District, Sluder "did * * * forge the name of * * * Robert A. Moreshead, on United States Treasury Check No. 96,-

200,898, in the amount of $97.50, dated July 10, 1969, * * *."

Sluder pleaded not guilty, was tried, and on a jury verdict of guilty was convicted and sentenced to imprisonment for three years. He has appealed.

The evidence adduced at the trial was clearly sufficient to warrant the jury in finding beyond a reasonable doubt these facts:

Moreshead was an investigator for the Civil Service Commission and an employee of the United States. Before July 13, 1969, he had been transferred from Lubbock, Texas, to Albuquerque, New Mexico. He arrived in Albuquerque on July 13, 1969, traveling in his automobile. He registered at the Sands Motel. Thereafter, and about 10 p. m. on July 13, 1969, he went to Eddie's Inferno Night Club and parked his automobile in the club parking lot. When he entered the club, he took off his coat, hung it over a chair at the table to which he was assigned, and went to the men's restroom. He returned to his table from the restroom, but did not notice the absence of his coat until shortly before midnight. His keys were in the coat. On discovering that the coat was gone, he immediately went to the club parking lot and discovered that his automobile was also gone. Thereupon, he notified the police. They recovered his automobile about 1 a. m. and returned it to him about 1:30 a. m. on July 14, 1969.

When Moreshead parked his automobile in such parking lot, he left in it the check described in the indictment, which was introduced as Plaintiff's Exhibit 1, and also two credit cards. Appendix I, appended hereto, is a copy of the check and the endorsements thereon. Neither the check nor the credit cards were in Moreshead's automobile when it was returned to him.

On cross-examination of Moreshead, counsel for Sluder brought out that Moreshead had not unpacked his automobile, and had left in it at the club parking lot golf clubs, a golf cart, wearing apparel, a briefcase, and suitcases, and that all of them and also the spare tire were missing when his automobile was returned to him by the police.

Written on the back of the check in the place for endorsement were the names, "Robert A. Moreshead" and "Sarah Moreshead." Moreshead did not write either of such names or endorsements on such check, and did not authorize Sluder or anyone else to write them, and he did not endorse or negotiate the check at any time.

One of the credit cards was issued by Standard Oil of Kentucky (Chevron) and the other by Humble Oil and Refining Company (Esso). Each credit card authorized Moreshead to purchase on credit from the dealers of the issuer thereof petroleum products and other goods and services, which such issuer authorized its dealers to sell on credit.

Six credit card charge slips were introduced in evidence as Plaintiff's Exhibit 2, and two credit card charge slips were introduced as Plaintiff's Exhibit 3. Appendix II, is a copy of Plaintiff's Exhibits 2 and 3. Moreshead's number on one of such credit cards was 917–239–411–7, and that number was stamped on each of such eight charge slips.

Under the heading "Buyer's Signature" or the heading "Received By" on six of such charge slips was written "Robert Moreshead"; on one of the other charge slips the words "Robt. Moreshead" were written, and on the other charge slip only the word "Moreshead" was written.

Six of such eight charge slips had written thereon, under the heading "License Number," "14–8398" and under the heading "State," "N.M."; and two of them had written thereon, under the heading "Year," "1969."

The records in the New Mexico Department of Motor Vehicles show that a 1967 Chevrolet "Spt. Cpe." was transferred to Marie Fitzgerald in 1968 and a certificate of title was issued to her therefor; that she continued to own it until July 27, 1970; and that during the months of October and November, 1969,

such Chevrolet, bearing license number 14–8398, was registered in such Department as belonging to Marie Fitzgerald.

Moreshead had never owned nor used an automobile bearing license number 14–8398.

B. J. Diers was employed by the H. Cook Sporting Goods Company at its Winrock store in Albuquerque on July 15, 1969. On that date, Diers cashed the check, Plaintiff's Exhibit 1, at such sporting goods store for a lady. The check bore the endorsements "Robert A. Moreshead" and "Sarah Moreshead." Diers described the lady who cashed the check as "approximately thirty years of age, light brown and blond hair, rather slender." He testified that she was accompanied by another woman, whom he could not describe. He testified that he had examined the check, Plaintiff's Exhibit 1, and that it bore his initials and showed it was cashed from his drawer at the store.

On Form 1607 of the United States Secret Service, Moreshead furnished to such Service specimens of his handwriting, consisting of his signature written three times and the words and figures "P O Box 1291 Lubbock Tex." written three times. Such specimens were identified as Plaintiff's Exhibit 4 and introduced in evidence. Appendix III is a copy of Plaintiff's Exhibit 4.

On December 30, 1969, William H. Hoge, Jr., was an Agent of the United States Secret Service, and Phillip Snyder was a Special Agent of the Federal Bureau of Investigation, hereinafter referred to as the F.B.I. On that date, they together interviewed Sluder at the Montessa Park Detention Center in Albuquerque, New Mexico. Before either of them asked Sluder any questions, Hoge identified himself to Sluder, showed Sluder his credentials, and then read to Sluder a form entitled "Warning and Consent to Speak," used by the United States Secret Service. The first five paragraphs of the form fully and clearly explained to Sluder all of his rights. The sixth paragraph of the form, headed "Consent to Speak," which was signed by Sluder, read:

"I have read this statement of my rights and it has been read to me, and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

The form was identified as Plaintiff's Exhibit 5 and introduced in evidence.

Before either Hoge or Snyder asked Sluder any questions, Snyder also presented to Sluder a form entitled "Interrogation; Advice of Rights," used by the F.B.I. The first four paragraphs thereof fully and clearly explained to Sluder his rights. The fifth paragraph read:

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me."

Appendix IV is a copy of the signature of Sluder, written by him, and the two lines below it, also written by him, on the form identified as Plaintiff's Exhibit 5, and also of the signature of Sluder, written by him, on the form identified as Plaintiff's Exhibit 6.

Hoge showed Sluder what had been marked as Plaintiff's Exhibit 1, the original of the check described in the indictment, and inquired of Sluder with respect thereto. Sluder replied that he had not seen the check before and had not forged Moreshead's name thereon. Hoge also inquired about the credit card charge slips, marked Plaintiff's Exhibits 2 and 3, and Sluder replied that he had used one of the two credit cards, issued to Moreshead, to purchase gasoline and signed Moreshead's name on the eight charge slips during a trip he took

through the South. Hoge asked Sluder where he obtained the credit cards. Sluder replied that he got them from "a short Negro at the La Palomas Bar, named J.B."

Hoge and Snyder were both present during the entire interview by them of Sluder.

Snyder testified that when Hoge inquired about the check, Sluder said he had no knowledge with respect to the check; that he inquired of Sluder concerning the use of the credit cards belonging to Moreshead, which were used to purchase gasoline, and he showed Sluder Plaintiff's Exhibits 2 and 3. Sluder stated he had used a credit card formerly belonging to Moreshead to purchase gasoline during his trip through the South, and that he had obtained the credit card from a man named "J.B." at the Palomas Bar in Albuquerque.

In answer to an inquiry by Hoge, Sluder stated that the automobile noted on six of the charge slips as bearing license number 14–8398, N.M., 1969, belonged to his "girl friend."

Snyder testified that in response to a like inquiry by him, Sluder stated the automobile belonged to his wife.

The records in the New Mexico Department of Motor Vehicles clearly showed it belonged to Marie Fitzgerald in October and November, 1969.

On December 9, 1970, Marie Sluder was called as a witness for the Government, under the name Marie Fitzgerald, in order to determine whether she was the wife of Sluder. In answer to an inquiry, she stated that her maiden name was Sanchez; that she had been known as Maria Fitzgerald at one time, and that she was married to Sluder in Juarez, Mexico, on Labor Day 1970. Sluder's trial was had in December 1970. The Government did not endeavor to elicit any further testimony from Mrs. Sluder after she testified she was Sluder's wife. Whether Marie Fitzgerald was Sluder's wife or his girl friend in October and November, 1969, is not material, because we think it is perfectly clear that Sluder,

in his answer to Hoge and his answer to Snyder on December 30, 1969, referred to the same person as the owner of the automobile, namely, Marie Fitzgerald, sometimes known as Maria Fitzgerald.

Plaintiff's Exhibits 7 and 8 are standard forms used by the United States Secret Service specifically for the collection of handwriting specimens.

Hoge presented to Sluder the form identified as Plaintiff's Exhibit 7 on December 30, 1969, and Sluder filled in in his own handwriting that portion which appears on such form below the words "Check—Case." Hoge also presented to Sluder on December 30, 1969, the form identified as Plaintiff's Exhibit 8, and Sluder filled in in his own handwriting that part of the form which appears below the words "Write—Do Not Print—Capital and Small Letters" in capital and small letters in the first column and all of what appears in the second column on such form. The originals of such forms were introduced in evidence as Plaintiff's Exhibits 7 and 8. Counsel for Sluder interposed no objection to the introduction of such exhibits nor to the testimony of Hoge or Snyder. A copy of Plaintiff's Exhibit 7 is set out in Appendix V, and a copy of Plaintiff's Exhibit 8 is set out in Appendix VI.

Hoge and Snyder went to the Palomas Bar and made an effort to locate a colored man by the name of "J.B." They inquired of people around the bar and found no one who knew a colored man by the name of "J.B."

Thurman E. Babb, a Special Agent for the United States Secret Service, interviewed Sluder at his home in Albuquerque. Before asking Sluder any questions, Babb advised him fully of his rights and told him that he had a right to remain silent; that anything he said could be used against him in a court of law; that he had a right to an attorney, and if he did not have funds to obtain his own attorney the court would appoint one for him, and that he could terminate the interview at any time. He showed Sluder the form of "Warning and Consent to Speak," introduced as

Plaintiff's Exhibit 5. Sluder said he did not want to sign it, but that he would talk.

Babb inquired of Sluder with respect to the check, Plaintiff's Exhibit 1. Sluder examined the check and stated that he did not "receive it, intercept it or cash it in any way and didn't have anything to do with it."

Babb showed Sluder the credit card charge slips, marked Plaintiff's Exhibits 2 and 3. Sluder stated to Babb that he went on a trip through the South and used the credit card to purchase gasoline; that the credit card charge slips were for the gasoline he so purchased, and that he obtained the credit card from a colored man by the name of "J.B." at the Palomas Bar in Albuquerque.

Robert Conner was called as a witness for the Government. He testified to the following facts:

That he was a document analyst with the Office of the Examiner of Questioned Documents, United States Treasury Department, Washington, D. C.; that his duties were to make handwriting examinations on Treasury checks, United States bonds, and threatening letters to the President of the United States; that he was a graduate of the Secret Service Questioned Document School and also had specialized training over a two-year period in the laboratory in Washington; that he had been engaged in the examination of questioned documents for a period of eight years; and that he belonged to the International Association for Identification. His qualifications were admitted by counsel for Sluder.

Conner testified that he examined Plaintiff's Exhibits 1, 2, 3, 4, 7, and 8 and made a comparison of the writing of Sluder on Exhibits 7 and 8 and the signatures of the purchaser on the six credit card charge slips, Exhibit 2, with the endorsements on the check and the words and figures written on the check below such endorsements.

Conner testified it was his opinion that the author (Sluder) of the specimens of handwriting on Plaintiff's Exhibits 7 and 8 and the signatures (Sluder's) of the name of the purchaser on the six credit card charge slips, identified as Plaintiff's Exhibit 2, was the same person who wrote the endorsement "Robert A. Moreshead" on the check, Plaintiff's Exhibit 1; that the author (Sluder) of the specimens of handwriting on Plaintiff's Exhibits 7 and 8 was also the author of the signatures of the purchaser on the six credit card charge slips identified as Plaintiff's Exhibit 2, but was not the author of the signatures of the purchaser on the two credit card charge slips identified as Plaintiff's Exhibit 3; and that the author (Moreshead) of the specimens of handwriting on Plaintiff's Exhibit 4 was not the person who wrote the endorsement "Robert A. Moreshead" on the check and the words and figures below such endorsement.

Plaintiff's Exhibit 14 is a photographic enlargement of the endorsement "Robert A. Moreshead" written on the check and "P O Box 1291" and "Lubbock Tex" written below such endorsement, and a photographic enlargement of the specimens of handwriting (Sluder's) in the first column of Plaintiff's Exhibit 7. Appendix VII is a copy of Plaintiff's Exhibit 14.

Conner also pointed out to the jury on enlargements of the endorsement "Robert A. Moreshead" on the check, the signatures "Robert Moreshead" on the six credit card charge slips, Plaintiff's Exhibit 2, and the specimens of Sluder's handwriting on Plaintiff's Exhibits 7 and 8, the close resemblance between the handwriting of Sluder on Exhibits 7 and 8 and the endorsement "Robert A. Moreshead" on the check, and the signatures on the six credit card charge slips, Plaintiff's Exhibit 2.

On redirect examination, Conner testified that he compared the endorsement "Sarah Moreshead" on the check, Plaintiff's Exhibit 1, with Plaintiff's Exhibits 7 and 8, the known writings of Sluder, and in his opinion such endorsement was not written by Sluder.

Frank Martinez was called as a witness for the Government. The jury was

excused and counsel for Sluder was permitted to voir dire Martinez. The material portions of Martinez's testimony on voir dire is set out in note 1 hereto.[1]

The witnesses, other than Martinez, had been put under the Rule and Martinez was in the courtroom when the first two witnesses testified. At that time, Martinez did not know he was to be a witness.

Counsel for Sluder moved the court to suppress any statements made by Sluder to Martinez, because Martinez had not advised Sluder of his rights.

The court ruled that Sluder's statements to Martinez were entirely voluntary and that the latter's evidence was admissible, and overruled the motion.

The jury was returned to the box and Martinez was called as a witness for the Government. He testified that he received a telephone call from Sluder on October 21, 1970; that Sluder asked for Special Agent Babb and he informed Sluder that Babb was out on another assignment; that he then talked to him; that he did not solicit the telephone call nor any statements from Sluder, and that Sluder told him there was a detainer lodged against him where he was (in the County Jail) and that he would like to appear before the United States Commissioner as soon as possible; that he did not want the Commissioner to require a cash bond, and if they could insure him that the Commissioner would not require him to put up a cash bond, he would tell Martinez who endorsed the name "Sarah Moreshead" on the treasury check; that Martinez then made arrangements for Sluder's arraignment before the Commissioner; that the arraignment took place on October 23, 1970; that he took Sluder to the Commissioner's office for the arraignment; that

1. On voir dire, Martinez testified that he was a Special Agent of the United States Secret Service, stationed in Albuquerque; that Sluder called the Albuquerque office of the Secret Service and he answered the telephone; that Sluder asked to speak to Special Agent Babb; that Babb was out of the office on a protective assignment and he so advised Sluder; that because of that fact Sluder talked with Martinez on the telephone and later came to the office and talked further to Martinez; that Martinez did not advise Sluder of his rights, either when he talked to him by telephone or at the office; that Sluder told him he was in the custody of the Bernalillo County Sheriff's Office at the County Jail, and that his wife had put up an appeal bond for him in a state case he was appealing; that when he went before the United States Commissioner he did not want to be required to give a cash bond, because he did not have available funds so to do; that Sluder told Martinez that "if we would insure or could help, or in any way make sure he did not have to put up a cash bond, he would tell us who was with him on the date that the check was cashed, he would name the female that had actually cashed the check"; that Sluder told him substantially that when he talked to him over the telephone and when he talked to him at the office.

Martinez further testified that on October 23, 1970, when he went to the County Jail to take Sluder before the United States Commissioner, and as they were leaving the jail, Sluder asked him, "Am I going to have to make a bond?"; that he answered, "No"; that Sluder then said, "The gal that cashed the check is here in County jail now and her name is Sarah Padilla"; and that he did not ask Sluder any questions.

Martinez further testified that when he went to the County Jail he had already talked to the United States Attorney, and that the latter had agreed with him that there was no necessity for a cash bond, and that he recommended to the Commissioner that Sluder be released on his own recognizance; that Sluder was so released.

Martinez further testified on voir dire that he interviewed Sarah Padilla at the County Jail, and that at his request she started to fill out in her own handwriting the forms used by the Secret Service to obtain specimens of handwriting, but did not finish the forms and stated she would not sign anything until she had talked to her attorney. Martinez further testified that he returned a week or two later and Padilla filled out the form in her own handwriting and signed her name thereto.

Martinez further testified on voir dire that he had talked to Assistant United States Attorney ReVeal and Special Agent Babb and had told them of the statements that had been made to him by Sluder.

he recommended to the Commissioner that Sluder be released on his own recognizance and the Commissioner so released him; that Sluder told him the name of the female who endorsed the name "Sarah Moreshead" on the treasury check was Sarah Padilla, who was then in custody in the Bernalillo County Jail, and that "Sarah was with me when she cashed the check."

On cross-examination, in response to questions from Sluder's counsel, Martinez further testified that after Sluder told him Sarah Padilla endorsed the name "Sarah Moreshead" on the check, he interviewed her in the County Jail and requested her to give him samples of her handwriting; that the first time he made the request, he got only limited samples and she asked him to leave until she could talk to her attorney about it; that he went back about a week or ten days later and she gave him specimens of her handwriting on two standard forms used by the Secret Service, similar to the forms on which the specimens of handwriting were written on Plaintiff's Exhibits 7 and 8; that he submitted the specimens he received from Sarah Padilla to Conner; that after examining them, Conner said he thought there was some similarity and some dissimilarity to the endorsement "Sarah Moreshead" on the treasury check and advised Martinez to get more samples from Padilla of her handwriting before sending them in for a formal handwriting opinion.

▇▇▇ The Government then rested. Counsel for Sluder then moved the court to strike all the testimony and physical evidence introduced by the Government which indicated that Sluder was involved with the commission of other crimes than the one with which he was charged, and specifically mentioned the theft of Moreshead's automobile, of the treasury check, and of Moreshead's credit cards, the utterance of the check,

and the misuse of the credit cards, on the ground that such evidence of other crimes was inadmissible and prejudicial.

The court denied the motion.

Evidence tending to establish the crime charged is not inadmissible because it tends to show the commission of other crimes by the accused.[2]

The facts that Moreshead left the treasury check in his automobile when he parked it at the parking lot at Eddie's Inferno Night Club; that when he missed the coat which contained his keys and which he had hung over a chair in the club, he went to the parking lot and discovered his automobile was not there, and that later when his automobile was returned by the Albuquerque police, the treasury check was missing, were admissible to show how Moreshead lost possession of the treasury check and that it came into the hands of a third person or persons and gave it or them an opportunity to forge Moreshead's endorsement on and cash the treasury check. Sluder admitted he had possession of Moreshead's credit cards and used one of them between October 16 and November 11, 1969, to purchase gasoline in Georgia, South Carolina and North Carolina, and that he forged Moreshead's name on the credit card charge slips issued for such gasoline. Such credit card charge slips when returned to Moreshead bore the number of one of his stolen credit cards. The handwriting expert testified that the same person wrote the name "Robert A. Moreshead" on the treasury check, and the name "Robert Moreshead" on six of the credit card charge slips, Plaintiff's Exhibit 2, and the specimens of handwriting written on Plaintiff's Exhibits 7 and 8. Sluder admitted he signed the names on the credit card charge slips, and the evidence clearly showed he wrote the specimens of handwriting appearing on Plaintiff's Exhibits 7 and 8 and the words "Robert Moreshead" on six of the

---

2. O'Dell v. United States, 10 Cir., 251 F. 2d 704, 707; Legatos v. United States, 9 Cir., 222 F.2d 678, 684; Cantrell v. United States, 116 U.S.App.D.C. 311, 323 F.2d 613, 614; Hanks v. United States, 10 Cir., 388 F.2d 171, 174; Moran v. United States, 10 Cir., 404 F.2d 663, 667.

credit card charge slips, Plaintiff's Exhibit 2, for the gasoline he purchased.

We are of the opinion that the theft of the credit cards, which occurred at the same time as the theft of the treasury check from Moreshead's automobile, the possession by Sluder of the credit cards, and the use by him of one of the credit cards to purchase gasoline at eight different service stations; the forging by Sluder of Moreshead's signature on six of the credit card charge slips issued for the gasoline so purchased, which was admitted by Sluder to Hoge and Snyder; the testimony of the handwriting expert that the endorsement "Robert A. Moreshead" on the treasury check, the signatures on six of the charge slips, Plaintiff's Exhibit 2, and the handwriting and signature "Robert A. Moreshead" on the specimens of handwriting given by Sluder, Plaintiff's Exhibits 7 and 8, were all written by the same person; and in addition, the voluntary statement by Sluder to Martinez that he was present when the treasury check was cashed, all taken together, warrant the conclusion that the treasury check was in the possession of or under the control of Sluder, and that he forged the name "Robert A. Moreshead" thereon.

Indeed, such facts are so related and inextricably intertwined that it would be impossible, we think, to clearly present the Government's case if any of them were not admitted. We hold that the motion was properly denied.

■ Counsel for Sluder then moved for a directed verdict of not guilty.

In passing on the sufficiency of the evidence to support a verdict of guilty in a criminal case, an appellate court will not *weigh conflicting* evidence *nor* pass on the credibility of witnesses, and it must view the evidence and the inferences that reasonably may be drawn therefrom in the light most favorable to the prosecution and determine as a matter of law whether there is substantial evidence, either direct or circumstantial, to support the verdict.[3]

In the instant case, proof of guilt does not rest alone on the testimony of the handwriting expert, as counsel for Sluder suggests. There are many additional facts and circumstances, including admissions by Sluder, that together with the testimony of the handwriting expert afford ample support for the verdict.

The court denied the motion. We hold that the motion for a directed verdict lacked merit and was properly denied.

■ Thereupon, counsel for Sluder moved for a mistrial on three grounds, namely:

1. That at the request of Sluder the court invoked the Rule and the witness Martinez violated the court's order by being in the courtroom while the first two witnesses for the Government testified;

2. That the Government furnished counsel for Sluder with a list of its witnesses and called three surprise witnesses not named on such list;

3. The grounds asserted in his first motion—his motion to strike.

With respect to the first ground of the motion for a mistrial, we digress to state that counsel for Sluder conceded that Martinez did not intentionally violate the Rule, nor did the United States Attorney intentionally permit him to do so.

United States Attorney Victor R. Ortega, who tried the Sluder case for the Government, was substituted for Assistant United States Attorney Stephen ReVeal, who was scheduled to try the case, but was unable to do so because he was tied up in the trial of another case in another courtroom at Albuquerque.

Ortega did not know that Martinez was to be a witness while the latter was

---

3. United States v. Jacobs, 5 Cir., 451 F.2d 530, 535; Steiger v. United States, 10 Cir., 373 F.2d 133, 135; Etheridge v. United States, 5 Cir., 380 F.2d 804, 809; Williamson v. United States, 5 Cir., 365 F.2d 12, 14; Feutralle v. United States, 5 Cir., 209 F.2d 159, 161; Sykes v. United States, 5 Cir., 373 F.2d 607, 609; Gorman v. United States, 5 Cir., 323 F. 2d 51, 52.

in the courtroom on December 9, 1970, when the first two witnesses testified for the Government. In fact, he did not learn that Martinez was to be a witness until the morning of December 10, 1970, when he had a short discussion about the case with Assistant United States Attorney ReVeal.

Moreover, we think it perfectly clear that the hearing by Martinez of the testimony of the Government's first two witnesses could not have affected his testimony in any way. The matters with respect to which the first two Government witnesses testified were in no way related to the matters with respect to which Martinez testified.

We conclude and hold that the violation of the Rule by Martinez was not prejudicial to Sluder.

██ That brings us to the second ground, the alleged surprise witnesses.

While the record is not clear, counsel for Sluder states in his brief that the three alleged surprise witnesses were Chavez, Martinez, and Diers.

Neither when Chavez and Martinez were called as witnesses nor during their testimony did counsel for Sluder interpose any objection to their testifying on the grounds that their names were not on the list of Government witnesses furnished him by the United States Attorney's office and that he was surprised by their testimony.

Not until he had been fully apprised of their testimony and the Government had rested its case, did counsel for Sluder interpose an objection to their testimony on such grounds.

A party must make timely and proper objection to alleged error in the admission of testimony, if he wishes to preserve it for appellate review. Absent a contemporaneous objection, such alleged error will be reviewed on appeal only if it is plain error and results in manifest injustice.[4]

There is nothing in the record to justify the conclusion that Sluder suffered any prejudice by reason of the omission of the names of those two witnesses from the list of witnesses furnished by the Government to counsel for Sluder.

Counsel for Sluder did object to the testimony of Diers, on the ground that his name was not on the list of Government witnesses furnished him by the United States Attorney's office. Such failure was unintentional. The testimony of Diers did not incriminate Sluder. It merely showed that some other person than Moreshead actually cashed the check.

We think the objection interposed to the testimony of Diers was not well founded and resulted in no surprise to Sluder or his counsel, especially when consideration is given to the voluntary statements of Sluder to Martinez.

We have already passed on the third ground of the motion, that is, the ground set up for the motion to strike, and held it was without merit.

When the case was called for trial, the court announced that he understood there was a motion to suppress evidence. The motion was heard and denied by the court. It involved the same evidence that counsel for Sluder moved to strike in the first motion that he interposed after the Government rested its case, and was based upon the same ground as such motion. We have already considered the first motion and the ground therefor and found it was without merit. For the same reason that we hold the court properly denied the motion to strike, we hold that it properly denied the motion to suppress evidence.

We have made a careful examination of the entire record and have reached the conclusion that no prejudicial error occurred during the trial, and that the judgment of conviction and the sentence should be and are

Affirmed.

4. United States v. DeLuzio, 10 Cir. (decided January 18, 1972) 454 F.2d 711, 713.

Pl.'s Ex. 1

APPENDIX I

714

Pl.'s Ex. 3    Pl.'s Ex. 3

**716**

FORM 1607 - SECRET SERVICE (Re. 8-1-44)   **APPENDIX III**   Pl.'s Ex. 4

File No. *4-1-3631*

Handwriting Specimens of:

Name *Robert A Moreshead*

Address *2314 Hoffman Dr. NE*

*Albuquerque, N.M*

Date Received *1/2/70*

By: *William X. Hoge Jr.*
   Agent, U.S. Secret Service

Re: *ROBERT A. MORESHEAD - PAYEE*
   (Check - ~~Bond~~ Case)

*Robert A Moreshead*
*Robert A Moreshead*
*Robert A Moreshead*

*P.O. Box 1291*
*Lubbock Ty*

*P O Box 1291*
*Lubbock Ty*
*P.O. Box 1291*
*Lubbock. Ty.*

(CONTINUE SPECIMENS TO BOTTOM OF PAGE)

PLAINTIFF'S EXHIBIT 4

Secret Service District:

*ALBUQUERQUE*

[A5289]      GPO 897293

I, _____ hereby make the following statement:

Signature _____

<u>APPENDIX IV</u>                Pl.'s Exs. 5 and 6

*[signature]*
Signature

Part of Pl.'s Ex. 5 showing signature of Sluder and
statement in his handwriting underneath signature.

Signed *[signature]*

Part of Pl.'s Ex. 6 showing signature of Sluder.
[A5290]

**718**

Pl.'s Ex. 7

FORM 1607 - SECRET SERV ___ (Re. 8-1-44)

File No. *1-1-34-31*

Handwriting Specimens of:

Name *Arthur Hammer Studer*

Address *2323 Katherine S.E.*

*Albuquerque, N.M.*

Date Received *Dec 30, 1969*

By: *William A Hoge Jr*
        Agent, U.S. Secret Service

Re: *ROBERT A MORESHEAD PAYEE*
        (Check - ~~Bond~~ Case)

*Robert A Moreshead*
*Robert A Moreshead*
*Robert A moreshead*
*Robert A Moreshead*
*Robert A Moreshead*
*Robert A Moreshead*
*Robert A Moreshead*
*Po Box 1291*
*Po Box 1291*
*Po Box 1291*
*Po Box 1291*

(CONTINUE SPECIMENS TO BOTTOM OF PAGE)

*Lubbock Tex*
*Lubbock Tex*
*Lubbock Tex*
*Lubbock Tex*
*Lubbock Tex*

Secret Service District:

*ALBUQUERQUE*

[A5291]

I, _____ hereby make the following statement:

*Sarah Moreshead*
*Sarah Moreshead*
*Sarah Moreshead*
*Sarah Moreshead*
*Sarah Moreshead*

Signature

PLAINTIFF'S
EXHIBIT
7

GPO 897293

APPENDIX VI
**UNITED STATES SECRET SERVICE**
FORM 1607A

Pl.'s Ex. 8

OFFICE _Albuquerque_

FILE No. _4-1-3631_

NAME: _Arthur H. Sluder_

STREET ADDRESS: _2325 Kathryn S E_

CITY: _Albuquerque_ STATE: _New Mexico_

PLACE OF BIRTH: _Fort Bragg N. C._

DATE OF BIRTH: _April 18, 1942_ AGE: _27_

HEIGHT _5_ Ft. _11_ In. WEIGHT: _160_ BUILD: _____

COLOR OF HAIR: _Blond_ COLOR OF EYES: _Blue_

RIGHT OR LEFT HANDED: _Right_

OCCUPATION OR TRADE: _Cab Driver_

WHERE NOW EMPLOYED OR LAST EMPLOYED: _____

NAME, ADDRESS, and ⎫
RELATIONSHIP of your ⎬ _____
NEAREST RELATIVE ⎭

_Arthur Bob Charles_
Arthur Bob Charles

_Don Edward Frank_
Don Edward Frank

_George Henry Imig_
George Henry Imig

_John Kenneth Lamb_
John Kenneth Lamb

_Mary Nan Olson_
Mary Nan Olson

_Paul Quentin Robert_
.Paul Quentin Robert

_Samuel Tom Umphrey_
Samuel Tom Umphrey

_WRITE—DO NOT PRINT—CAPITAL AND SMALL LETTERS_

A B C D E F G H I J K L M
(N O P Q R S T U V W X Y Z)
a b c d e f g h i j k l m
n o p q r s t u v w x y z

_Vernon Will Xavier_
Vernon Will Xavier

_Yolanda Ziffman_
Yolanda Ziffman

_1234 N. East Ave., SW_
1234 N. East Ave., SW

_5678 S. West Blvd., NW_
5678 S. West Blvd., NW

_9012 E. North Pl., SE_
9012 E. North Pl., SE

NUMBERS: 1 2 3 4 5 6 7 8 9 10

_3456 W. South St., NE_
3456 W. South St., NE

x _Arthur H. Sluder_

PLAINTIFF'S EXHIBIT 8

The above is a specimen of my handwriting prepared freely and voluntarily.

DATE: _Dec. 30, 1969_ SIGNATURE: _____

WITNESS: _William H. Hoge Jr._

DATE: _December 30, 1969_

EXEMPLARS OF: (PRINT)

_Sluder_ _Arthur_ _H_
Last Name / First Name / Initial

YEAR BORN: _April 1942_ RACE: _White_

TD-0A8-0C
[A5292]

APPENDIX VII                Pl.'s Ex. 14

## ENDORSEMENT ON CHECK

*Robert A Moreshead*
*P O Box 1291*
*Lubbock Tex*

JUL 15 69 110000

## WRITING OF DEFENDANT

(Check - ~~Bond~~ Case)

*Robert A Moreshead*
*Robert A Moreshead*
*Robert A moreshead*
*Robert A Moreshead*
*Robert A Moreshead*
*Robert A Moreshead*
*Robert A moreshead*

*Po Box 1291*
*Po Box 1291*

*Lubbock Tex*
*Lubbock Tex*
*Lubbock Tex*

[A5293]