**John P. HAZEL, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 7378.

District of Columbia Court of Appeals.

Argued Jan. 15, 1974.

Decided April 18, 1974.

Fred M. Vinson, Jr., Washington, D. C., appointed by this court, for appellant.

Regina C. McGranery, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry and Robert Alan Jones, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This appeal is from a conviction of second degree burglary. Appellant raises two issues which he contends compel reversal. He urges that a gratuitous statement made by the trial judge constituted prejudicial error. He also contends that his right to cross-examine a prosecution witness was prejudicially curtailed. Having considered these arguments, and finding that no reversible error was committed, we affirm.

I. *The trial court's gratuitous comment did not constitute reversible error.*

At trial, Arthur Trakas, the complaining witness, testified that upon returning to his family's apartment, he inserted his key and unlocked the door only to find that the door was secured from the inside by a chain lock. Mr. Trakas recounted that this

was not unusual since his mother often secured the door in this fashion when she was at home. Mr. Trakas called through the slightly opened door three times for his mother, but when no answer was forthcoming, he grew apprehensive and withdrew to a position in the hall from which he could watch the door and "not be seen." After a few moments, appellant exited from the Trakas apartment, and Mr. Trakas immediately apprehended him.

On cross-examination of Ernie Trakas, a brother of Arthur and a co-occupant of the apartment, the defense elicited testimony that he (Ernie) had locked the apartment door when he left approximately twenty-five minutes before Arthur arrived. Then followed this line of interrogation:

BY DEFENSE COUNSEL:

Q. Let me ask you this question: Could anyone possibly have gotten in the door you are talking about as you left it without a key?

[PROSECUTION]: Objection. That's [sic] calls for a conjecture on the part of the witness, and if the lock was slipped without a key—

THE COURT: I'll sustain the objection.

BY DEFENSE COUNSEL:

Q. So far as you know you would have to have a key—

[PROSECUTION]: Objection.

THE COURT: I'll sustain the objection. There are any number of ways to open a lock without a key.

[DEFENSE COUNSEL]: I would object to that observation of the Court and I would ask for a mistrial.

THE COURT: Objection overruled and a mistrial is denied.

Appellant, citing Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); Williams v. United States, D.C.App., 228 A.2d 846, 847 (1967); Blunt v. United States, 100 U.S. App.D.C. 266, 276, 244 F.2d 355, 365 (1957), urges that by offering its comment, the court violated the precept that a judge must "not assume the role of a witness" nor distort or add to the evidence. Appellant emphasizes that "[w]hen the judge supplements the evidence, as he did here, the harm is even greater than when the prosecutor does it, for 'the influence of the trial judge on the jury is necessarily and properly of great weight, and . . . his [s]lightest word or intimation is received with deference, and may prove controlling.' Starr v. United States, 153 U.S. 614, 626, 17 S.Ct. 223, 41 L.Ed. 577 (1894); see also Blunt v. United States, supra." (Brief for Appellant at 10; brackets supplied.)

■ Appellant fails to demonstrate, however, in what way the judge's comment was prejudicial under the circumstances in which it was made. The mode of appellant's alleged entry was not at issue in the case, and the fact of entry into the premises was logically inferable from the complaining witness' testimony that he saw appellant leave the premises. The government's burden of proof was in no way lightened. In fact, the line of cross-examination and the comment itself were quite irrelevant. Furthermore, the comment was made following two questions by defense counsel, which sought to elicit the response that the lock could have been opened only with a key. To a large extent the judge's statement merely tended to clear the air of any suggestiveness emanating from defense counsel's questions, objections to which were sustained.

The cases cited by appellant in support of reversal are factually so different from the instant case that they cannot be deemed controlling. In those cases, the court made comments which were clearly prejudicial. The egregious errors there committed which necessitated reversal have no similarity to the isolated and irrelevant comment in the instant case.

■ Certainly, all gratuitous comments from the bench are not prima facie prejudicial though, for the most part, they should be avoided. Furthermore, even if a comment does create the possibility of prejudice, an effectively worded curative instruction rendered in a timely manner may serve to rectify the error. *Cf., e. g.,* United States v. Patterson, 495 F.2d 107 (D.C.Cir.).

■ Even if the comment in this case is viewed as error, any tendency of the statement to have improperly affected the jury may, in the circumstances of this case, be deemed to have been eradicated by the following instruction, included in the general jury instructions the next trial day after the comment was made:

In response to one objection made concerning how the apartment was entered into, the Court made some comment about different ways locks can be opened. That, of course, was not evidence and I should not have made that statement in the context that I did. You are to disregard it absolutely, and you are not to consider the statement the Court made as to how the apartment may be entered into as evidence to be considered by you in any way. The evidence is what is produced from the mouth[s] of the witnesses only [Tr. II at 83.]

II. *Appellant was not prejudiced by the restriction imposed on cross-examination of a prosecution witness.*

■ Arthur Trakas stated on direct examination that he saw appellant exit from the Trakas apartment. Defense counsel attempted to impeach this testimony by reference to Arthur's grand jury testimony in which he had stated, "About no more than a minute later [following retreat from the door] the chain came off and out came the defendant, I guess." [Tr. II at 57.] In attempting to establish that Arthur had withdrawn to a position from which he could not see the apartment door, defense counsel initiated the following:

Q. As a matter of fact, you didn't see the defendant coming out of that apartment because you were standing by the elevator preparing to go downstairs to tell the switchboard operator someone was in your aparement; isn't that correct?

A. No, sir. I stated right here that I heard the chain come off the door. If I had went [sic] down to the lobby he would have gone. What good would it have done? Right here (indication) I heard the chain come off the door as I turned around the corner to wait. I hadn't finished coming out of this hallway when I heard the latch coming off the door. I turned right around here and waited (indicating).

Q. It is a fact, isn't it, that the reason you told the Grand Jury that the defendant came out of your apartment—

[PROSECUTION]: Objection.

THE COURT: Wait until he completes the question.

[DEFENSE COUNSEL]: —because the defendant came down that corridor, and it was because it was in this apartment [apparently another apartment] that you heard noises? Isn't that why you told the Grand Jury—you used the words, "I guess"—

[PROSECUTION]: Objection.

THE COURT: Will counsel approach the bench? [Tr. II at 46–47.]

In the ensuing bench conference the court asked defense counsel whether he was capable of offering evidence to establish that Arthur had moved to the elevator. Counsel stated, in effect, that the factual assumption in his question was based on what the accused had told him. He also questioned whether it was necessary "to have a factual basis for an effort to impeach a witness and seek to pursuade him

to say what I believe the facts [to] be . . . ." Counsel also acknowledged that the accused was not then going to testify.

The judge then read from the ABA Standards as follows:

> It is unprofessional conduct to ask a question which implies the existence of a fact which the examiner cannot support by evidence.[1]

The judge continued:

> Later on in the Standards it says that people engaged in the unprofessional conduct should be subject to disciplinary sanction. So, you are put on notice. If you present a fact question which you cannot support by evidence you will be subject to disciplinary sanction pursuant to the ABA Standards which applies to the defense as well as the prosecution.

In reviewing the record on this question we note that the Standard as finally adopted contained an amendment to the tentative draft requiring actual knowledge of counsel's inability to support his factual predicate by evidence. The purpose of this change was to require culpability for possible disciplinary action.[2] *See* the Supplement preceding the Tentative Draft to the Standard as cited in note 1, *supra*. In overlooking this added element of actual knowledge, the trial judge took counsel to task for pursuing a line of cross-examination which can hardly be viewed as unprofessional. Cross-examination is a vital part of our adversary process. Indeed, it is an art which, when mastered and professionally used, is the most powerful tool for reaching the truth. *See* Davis v. Alaska, — U.S. —, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

This Standard, along with its counterpart—The Prosecution Function, § 5.7(d) —obviously applies to the extreme situations where counsel well knows his assumed factual predicate is either false and thus incapable of proof or true but incapable of proof because of an order of suppression of evidence or other impossibility. However, the Standard is not as easy of application in less extreme cases when one recognizes that effective cross-examination often requires a tentative and probing approach to the witness' direct testimony, and this cannot always be done with hard proof in hand of every assumed fact.

This case can serve as an example. Arthur Trakas has testified that he "more or less was hiding" by a fire extinguisher when the accused removed the chain lock and came out of the Trakas apartment. In testing the truth of this version, the defense first confronted Mr. Trakas with his equivocal "I guess" testimony before the grand jury. Then, based upon what the accused had apparently told him, counsel confronted the witness with a different hypothesis in an effort to get at an explanation for the equivocation in the grand jury testimony which would also serve to cast doubt on the critical testimony. This was not a clearly preposterous approach and was within permitted bounds of effective cross-examination. That, at the moment of questioning, the accused was not planning to testify is not particularly significant under these circumstances. That decision could have been changed. In any event, the assumed factual predicate for the question was neither known by counsel to be false, nor inherently incredible, thus to amount to unprofessional conduct.

This is not to say that a lax approach may be taken in this area of professional

---

1. ABA Project on Standards for Criminal Justice, the Prosecution Function and the Defense Function, The Defense Function, Part VII, § 7.6(d) (Approved Draft, 1971). The actual phrasing of the Standard uses the words "a factual predicate" instead of "a fact" as stated by the trial judge. We think this difference to be of no significance.

2. The Defense Function Standard, § 7.6(d), as approved, states:
   > It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner *knows he* cannot support by evidence. [Italics in original.]

responsibility. What is said here, by no means, is to be understood as eroding what must be a very high standard of conduct. However, we do recognize that some flexibility is necessary in probing asserted truth on cross-examination. The commentary to this Standard seems to recognize this for it gives as examples highly inflammatory questions heavily laden with improper innuendo.[3]

This court in White v. United States, D.C.App., 297 A.2d 766 (1972), has recognized:

> Although counsel need not indicate to the court before he commences cross-examination what facts he seeks to elicit, Alford v. United States, 282 U.S. 687, 692, 51 S.Ct. 218, 75 L.Ed. 624 (1931), he may not ask questions of a witness that are *totally groundless*. United States v. Pugh, 141 U.S.App.D.C. 68, 71, 436 F.2d 222, 225 (1970) . . . . [*Id.* at 767–768 n.1; emphasis supplied.]

As in this case, we observed in *White* that defense counsel represented that he had "some information to support the questions" he desired to ask. *Id.*

Having concluded that this line of cross-examination was not improper, we must decide whether the reaction of the trial judge requires reversal. *See* Hampton v. United States, D.C.App., 318 A.2d 598 (decided this date); White v. United States, *supra*. During the course of cross-examination on the point of whether Arthur Trakas actually saw the accused come from his apartment, the following occurred:

> Q. So there is no question in your mind that when you found that someone was in your apartment . . . you did not go to the elevators to go downstairs to the lobby to report this to the switch-board operator? There is no question in your mind that that's not what you did, is that correct?
>
> A. Yes, sir.

Thus, appellant was not precluded from asking a question which assumed that Arthur Trakas may not have been where he said he was so as to see appellant leave the apartment. This line of questioning was terminated by the court only after it was suggested, by way of a question, that Arthur Trakas told the grand jury he guessed he saw appellant exit the apartment because he was not where he could see that event. This is where appellant's analysis of the case ends. He assumes the incorrectness of the limitation, and, as stated above, he is correct. However, in his assertion of prejudice, he fails to take account of five subsequent events during the remainder of the trial which highlighted the significance of the equivocating grand jury testimony.

The appellant, pro se, consistent with his announced desire before jury selection,[4] took over cross-examination of Arthur Trakas and examined his only defense witness, the switchboard operator. During his cross-examination of Arthur, he pursued the point further by asking questions in the third person suggesting that if Arthur saw the appellant then the appellant must have seen Arthur. The obvious implication, though cleverly veiled, was that appellant did not see Arthur because Arthur was not there. Then, at closing argument, also undertaken by appellant, pro se, he argued three times that the "I guess" equivocation was worthy of creating a reasonable doubt as to the truth of Arthur's testimony. A final reference to this impeaching grand jury testimony came from the trial judge during the jury charge when it was stated

---

3. *See also* State v. Williams, Minn., 210 N.W. 2d 21 (1973).

4. Appellant, an articulate man, wanted "to participate in [his] own proceeding." He had a high school education and had "two years of training down at Lorton [Reformatory] filling various writs and motions". He also had worked at a law school library for thirteen months, and, as he observed, he was "familiar with the language of the court". Though he had not represented himself in court before, he felt "it shouldn't take a Philadelphia lawyer to argue this case."

that such an inconsistency could discredit trial testimony.

We think that under these circumstances effective jury consideration of the question whether Arthur saw what he said he saw was not unduly precluded by the limitation imposed on counsel's cross-examination. *See* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *cf.* Hampton v. United States, *supra.* This case is thus unlike White v. United States, *supra,* where we found prejudice in an absolute limitation on developing possible bias during cross-examination. Accordingly, the judgment of conviction is

Affirmed.[5]

5. Appellant's counsel also raised a point in his brief respecting pretrial commitment under Title I of the Narcotic Addict Rehabilitation Act of 1966, 28 U.S.C. §§ 2901–2904, in lieu of prosecution. The point was abandoned at oral argument in light of the intervening decision in Marshall v. United States, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974).

Appellant, pro se, by letter to this court also asserts insufficiency of evidence, citing United States v. Melton, D.C.Cir., 491 F.2d 45 (1973), and an instructional point respecting unexplained presence in the apartment, which appellant's letter says "is directly related" to the sufficiency point. We have considered both issues. In so doing, we imply no criticism of appellant's able counsel for his professional decision not to press them. He was quite correct; the points are without merit on this record.