631 P.2d 321

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Ralph Henry BARTLETT,
Defendant-Appellant.**

No. 4022.

Court of Appeals of New Mexico.

Jan. 29, 1981.

---

Roderick A. Dorr, Terrazas & Dorr, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant stabbed his father to death during an altercation in the apartment in which both defendant and his father lived. He pleaded self-defense. Defendant was convicted of second degree murder in violation of § 30–2–1, N.M.S.A. 1978 and appeals. We reverse.

**A.** *Defendant's conviction is reversed because of prosecutorial misconduct.*

Defendant claims prosecutorial misconduct of the prosecutor who presented the State's case. The misconduct consists of a series of questions asked defendant on cross-examination and the rebuttal testimony of James Duran.

The series of questions asked and answers given were:

Q. Isn't it a fact that on December 20, 1977, you were arrested by the Albuquerque Police Department for trying to kill your father?

A. Say that again, please.

Q. Isn't it a fact that on December 20th last year, 1977, you were arrested by the Albuquerque Police Department for trying to kill your father with a knife?

A. *No.*

Q. You weren't arrested?

A. December 7th.

Q. In December, 1977, you were not arrested?

A. No. Wait. I was arrested, yes.

Q. *And you were arrested because you tried to kill your father, isn't that correct?*

A. *No.*

Q. *You didn't try to kill your father?*

A. *No.*

Q. Weren't you at that time living on, in an apartment house on Crystal NW?

A. Yes.

Q. And wasn't your father living there with you?

A. Yes.

Q. And you were arrested at that apartment house, weren't you?

A. Yes.

Q. *And you were attempting to break down the door to get to your father with a butcher knife, isn't that correct?*

A. *No.*

Q. *And isn't it also a fact that when someone tried to stop you you threw a knife at the person that tried to stop you?*

A. *No.*

Q. Okay. Now about these bumps on your head, Mr. Bartlett, where do you claim they came from?

A. The bumps on the back of my head?

Q. Yeah.

A. From my father, from the night of the incident.

Q. Uh huh. *Isn't it a fact, Mr. Bartlett, that you were in a fight in the jail and that you sent a person to the hospital, and that you got those bumps in that fight?*

A. *No.*

Q. *You weren't in a fight in the jail?*

A. *No.* [Emphasis added.]

This series of questions asked may be divided into two categories:

(1) Constant repetition that on December 20, 1977, the previous year, defendant was trying to kill his father with a knife, a butcher knife, and threw it at a person who tried to stop him.

In rebuttal, the State called James Duran. He testified that on December 20, 1977, he saw defendant trying to kick in a door of the apartment shared by his father, shouting "I'm going to get you"; that defendant's father was not then in the apartment, and defendant was arrested for causing a disturbance. Defendant was not impeached or discredited on any answers given by defendant.

The next day, the trial court attempted to cure the prejudicial effect of the series of questions regarding defendant's alleged attack on his father with a knife. It instruct-

ed the jury that there was no evidence that defendant had been arrested for trying to kill his father with a knife; that there was only one question to disregard:

"Isn't it true that you were arrested for trying to kill your father with a knife?"

(2) Defendant got bumps on his head from a fight in the jail that sent a person to the hospital.

The State presented no rebuttal testimony to impeach or discredit the answers given by defendant.

Prior to Duran's testimony, the State made an offer of proof. This tender showed that Duran did not see defendant with a knife nor see him go after his father or anyone else; that damage was done to a window in another apartment; that the window was broken and Duran, looking through the window, found a "dagger" hunting knife; that defendant was intoxicated. Duran did not think defendant was arrested for attempting to kill his father with a butcher knife; he was arrested for verbal assault. An offense report admitted at the hearing showed defendant arrested for protective custody.

With knowledge of these facts, the prosecutor cross-examined defendant. Nevertheless, the trial court denied defendant a mistrial.

The question for discussion is:

During trial, while defendant was charged with first degree murder, was the cross-examination of defendant prosecutorial misconduct that denied defendant a fair trial? The answer is "yes."

■ When a person's life or liberty is placed in jeopardy by reason of a charge of first degree murder, courts should be sensitive to any conduct of the prosecutor that might affect the guilt or innocence of a defendant. Especially, courts should note whether, during the examination and cross-examination of witnesses, the prosecutor acted in a standardless fashion.

■ In the instant case, the prosecutor's cross-examination accused defendant of two

false criminal offenses: (1) attempting to kill his father with a knife and butcher knife and (2) assault and battery in a jail. These two items of misconduct could have no purpose other than to arouse the prejudices of the jury against defendant. When a prosecutor asks such questions as those here in question, no course is open to this Court except to set aside the conviction.

A prosecutor who cross-examines in the form of leading questions, which he has a right to do, is the witness who testifies before the jury, not the defendant. The questions asked were equivalent of testimony by the prosecutor that defendant had committed two crimes, both of which could have affected the conduct of defendant in the minds of the jury with reference to the offense charged of first degree murder. These questions were without any foundation to support the zeal of the prosecutor to convict defendant. Because the prosecutor represents the government and people of the State, it is reasonable to say that jurors have confidence that the prosecutor will fairly fulfill the duties necessary to see that justice is done whether by conviction of the guilty or acquittal of the innocent. The cross-examination whether proper or improper carries with it the authority of all he represents. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The interest of a state in a criminal prosecution "is not that it shall win a case, but that justice shall be done." [Id. at 88, 55 S.Ct. at 633.] *Berger* was cited in *Valles v. State*, 90 N.M. 347, 354, 563 P.2d 610 (Ct. App.1977), Sutin, J., specially concurring. *State v. Ramirez*, 89 N.M. 635, 649, 566 P.2d 43 (Ct.App.1976), Sutin, J., dissenting; *State v. Aragon*, 82 N.M. 66, 475 P.2d 460 (Ct.App.1970); *State v. Cummings*, 57 N.M. 36, 253 P.2d 321 (1953) [quoted at length]. *Berger* was adopted the country over.

District attorneys are charged with the duties of vigorously prosecuting those who are guilty of crime. Zeal in the prosecution of offenders is always to be commended. But the district attorney who permits his zeal to secure convictions in disregard of his duty as a "sworn minister of justice" not only wrongs the defendant, he impedes the administration of criminal justice and brings the administration of the criminal law into disrepute.

■ "As an officer of the court a prosecutor carries a heavy responsibility to both the court and the accused to conduct a fair trial. This responsibility requires that he not inject into the trial prejudicial matter which is obviously inadmissible." *United States v. Woods*, 486 F.2d 172, 175 (8th Cir. 1973). While the prosecutor is under a duty to prosecute the case with vigor and earnestness, he should not take unfair advantage of the defendant. *Young v. State*, 363 So.2d 1007 (Ala.Cr.App.1978). The questions alone, although answered in the negative, leave an indelible impression on the jury. *Watkins v. Foster*, 570 F.2d 501 (4th Cir. 1978).

Section 5.7(d) and commentary of the American Bar Association Standards Relating to the Prosecution Function (Tent.Dr. 1971) reads:

It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner cannot support by evidence.

\*    \*    \*    \*    \*    \*

d.  Unfounded question.

The attempt to communicate impressions by innuendo through questions which are answered in the negative, for example, "Have you ever been convicted of the crime of robbery?" or "Weren't you a member of the Communist Party?" or "Did you tell Mr. X that * * * ?" when the question has no evidence to support the innuendo, is an improper tactic which has often been condemned by the courts.

Where considered, this standard has been given widespread support. See *Hervey v. People*, 178 Colo. 38, 495 P.2d 204 (1972); *Commonwealth v. White*, 367 Mass. 280, 325 N.E.2d 575 (1975); *State v. Smith*, 228 N.W.2d 111 (Iowa 1975); *State v. White*, 295 Minn. 217, 203 N.W.2d 852 (1973); *State v. Williams*, 297 Minn. 76, 210 N.W.2d 21 (1973); *Gray v. State*, 525 P.2d 524 (Alaska 1974); *Commonwealth v. Smith*, 457 Pa.

638, 326 A.2d 60 (1974); *Hazel v. United States*, 319 A.2d 136 (D.C. Ct.App.1974).

In *State v. Chambers*, 86 N.M. 383, 386–7, 524 P.2d 999 (Ct.App.1974), we quoted the following:

"While it is the duty of a prosecuting attorney to use his best endeavor to convict persons guilty of crime, his methods in procuring such conviction must accord with the fair and impartial administration of justice, and he should see that the accused receives a fair trial so far as it is in his power to afford him one. Here, if anywhere upon earth, the benign maxim of the law, that it is better that ninety-nine guilty persons should escape than that one innocent man should be punished prevails in all its force."

For the past quarter century, we have continuously reversed convictions for prosecutorial misconduct of this nature. *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App. 1978); *Albertson v. State*, 89 N.M. 499, 554 P.2d 661 (1976); *State v. Lara*, 88 N.M. 233, 539 P.2d 623 (Ct.App.1975); *State v. Ross*, 88 N.M. 1, 536 P.2d 265 (Ct.App.1975); *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974); *State v. Garcia*, 83 N.M 51, 487 P.2d 1356 (Ct.App.1971); *State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966); *State v. Cummings, supra.*

■ Where the question is improper in the form given, it is prejudicial error and no attempt to admonish the jury to forget the question could possibly erase the effects. *Rowell, supra; Garcia, supra; Vallejos, supra.* "Indeed, the judge's cautionary instruction may do more harm than good: It may emphasize the jury's awareness of the censured * * * [question] as in the story, by Mark Twain, of the boy told to stand in the corner and not think of a white elephant." *United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 656 (2d Cir. 1946), Frank, J., dissenting. Judge Frank's dissent, an essay on this subject matter, should be reviewed as a clarion call in these days of extensive criminal trials. We have consistently condemned such prosecutorial misconduct.

Strong emphasis is placed on this type of misconduct as a deterrent to avoid the expense of mistrials and new trials in a congested trial docket in the district courts. Every district attorney and his staff should place on the wall of each office at least 10 commandments of caution. Subsequently, it might tend to make them live up to the standards of courtroom decency. It has been said, in affirming a conviction, that the district attorney, a constitutional officer, should be subject to censure for his conduct. *State v. DiPaglia*, 64 N.J. 288, 315 A.2d 385 (1974). See also, vigorous dissenting opinion of Justice Clifford.

We have a natural hesitation to reverse a conviction where the evidence of guilt is strong. But to reach the conclusion that the errors were harmless as the State contends, we must hold that the guilt of the defendant was conclusively proved. To do so in a first degree murder charge is to try the defendant in this Court and deprive him of his right to a trial by jury. If we, sitting on a reviewing court, believe from merely reviewing the record that a defendant is guilty, we must not hold that cross-examination of the defendant that seriously prejudiced the jury against the defendant, is to be regarded "harmless." We have not seen or heard the witnesses. If we render our own independent verdict of guilty, then the defendant has been convicted by the judges, not the jury. We do not sit as a jury. The courts generally hold that such prosecutorial misconduct will be deemed to have induced the verdict and to require reversal. After injecting it into the case to influence the jury, the prosecutor ought not to be heard to say, after he has secured a conviction, it was harmless.

■ The State contends that the prosecutor's cross-examination was proper under Rules 404 and 405(a) of the New Mexico Rules of Evidence. These rules pertain to character evidence and proof thereof. It is sufficient to say that false accusations of violent criminal charges do not bear upon defendant's traits of character.

In view of the conclusion reached, it is unnecessary to consider other points raised by defendant.

For the above reasons, the judgment must be reversed and the cause remanded for a new trial.

Reversed.

IT IS SO ORDERED.

WALTERS, J., specially concurs.

HERNANDEZ, J., dissents.

WALTERS, Judge (specially concurring).

I concur. N.M.R.Evid. 609, N.M.S.A. 1978, does not permit questioning about *conviction* unless the crime can be established, on defendant's denial, by public record, and then only if (1) the conviction concerned a crime punishable by death or imprisonment in excess of one year and the court determines that admission of the evidence is justified because its probative value outweighs its prejudice; or (2) the crime involved dishonesty or false statement. Here, one question asked about an *arrest*; the other referred to an alleged prior bad act.

If a prosecutor may not inquire about a conviction except in narrowly circumscribed instances and then must be prepared to prove it by a public record if denied (*see also State v. Williams*, 76 N.M. 578, 417 P.2d 62 (1966)), it is wholly illogical to assume he may be permitted to inquire about an arrest, much less that he may rely upon hearsay information to establish his good faith in asking such a question. *State v. McCabe*, 41 N.M. 428, 70 P.2d 758 (1937), long ago held that testimony regarding an arrest is not admissible for impeachment or to affect a defendant's credibility.

Rule 404(b), N.M.R.Evid., N.M.S.A. 1978, prohibits admission of prior bad acts to prove a defendant's character and that he acted in conformity therewith, except for certain purposes. The trial court felt the exception of "mistake or accident" would apply since defendant pleaded self-defense. I cannot agree that a claim of self-defense may be equated with a claim of mistake or accident. The plain meanings of "mistake" and "accident" have nothing in common with a defense that may be translated as stating the first law of nature, the right of self-preservation: "I used such force as was necessary in defense of my own life and person." The exception to rule 404(b) relied on by the trial court is not inherent in the law of self-defense, and unless an exception exists, the rule prohibits the question.

There was no evidence at all that the second improper set of questions regarding a fight in the jail had any basis in fact. Consequently those questions could not have been asked in good faith. *State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966), imposes the burden on the State of proving that it proceeded in good faith when it is challenged for propounding improper questions which tend to prejudice the defendant in the minds of the jury. With regard to the question of a prior arrest, I agree wholeheartedly with what Justice Moise had to say in the Rowell case, and I quote:

We are convinced that the damage implicit in the asking of the question was in no way repaired by virtue of the fact that the objection was sustained. Neither was it overcome by the admonitions given the jury. We would be deluding ourselves if we were to believe that human nature being what it is, at least some of the jurors would not assume because of the form of the question, that indeed appellant had been * * * [arrested] as stated by the district attorney. Whether or not * * * [he] had was irrelevant in this case and, accordingly a reversal and new trial are inevitable.

The inadmissibility of evidence of prior bad conduct, the State's failure to establish a factual predicate for such questions concerning an alleged fight at the jail, and defendant's objection to those inquiries, all combine to bring that set of questions as well within the censure of the *Rowell* decision. As Justice Moise pointed out:

Here, we are not dealing with evidence admitted and withdrawn. Rather, the question is one of prejudice to the defendant arising out of the asking of an improper question for the ostensible purpose of planting ideas or thoughts in the minds of the jury.

\* \* \* \* \* \*

\* \* \* [T]he question was in a grossly improper form to prove anything. It could not possibly establish or accomplish anything but prejudice.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

Defendant alleges three points of error, to-wit:

POINT I: DEFENDANT'S CONVICTION SHOULD BE REVERSED BECAUSE OF THE CUMULATIVE EFFECT OF PROSECUTORIAL MISCONDUCT.

POINT II: THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION IN ADMITTING INTO EVIDENCE THE TESTIMONY OF THE STATE'S REBUTTAL WITNESS CONCERNING AN ALLEGED PRIOR BAD ACT BY DEFENDANT.

POINT III: THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION IN NOT GRANTING DEFENDANT'S MOTION FOR A MISTRIAL BASED UPON THE MISCONDUCT OF THE PROSECUTOR.

All three of these points rest upon whether the trial court was correct in allowing the following questions to be asked of the defendant:

Q. Isn't it a fact that on December 20, 1977, you were arrested by the Albuquerque Police Department for trying to kill your father?

A. Say that again, please.

Q. Isn't it a fact that on December 20th last year, 1977, you were arrested by the Albuquerque Police Department for trying to kill your father with a knife?

A. No.

\* \* \* \* \* \*

Q. And you were attempting to break down the door to get to your father with a butcher knife, isn't that correct?

A. No.

\* \* \* \* \* \*

Q. Uh huh. Isn't it a fact, Mr. Bartlett, that you were in a fight in the jail and that you sent a person to the hospital, and that you got those bumps in that fight?

A. No.

Q. You weren't in a fight in the jail?

A. No.

The defendant's attorney objected only to the last two questions and his objection consisted of "I object."

A party must make timely and proper objection to alleged error in the admission of testimony, if he wishes to preserve it for appellate review. Absent a contemporaneous objection, such alleged error will be reviewed on appeal only if it is plain error and results in manifest injustice. U. S. v. Sluder, 457 F.2d 703, 712 (10th Cir., 1972).

The general rule, subject to some qualifications, is that objections to evidence should state the specific grounds upon which they are based, and that the trial court may properly disregard general objections which fail to point out why the evidence is inadmissible. General objections, if they raise any point at all, go only to the question whether the evidence is admissible under any phase of the case. State v. Jackson, 47 N.M. 415, 143 P.2d 875 (1943).

Rule 103(d), N.M.R. of Evid. provides: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge." The defendant admitted that he killed his father but claimed that he did so in self defense. He testified that his father had beaten him since he was a child and did so on the night of the killing. He further testified that he had never struck back until that night.

It is my opinion that, in this context, it did not constitute plain error to allow these questions to be asked. It is my further opinion that the trial court would not have erred in allowing these questions even if defendant had objected to those he did not object to, and had objected properly to those he did object to. Rule 405(b), N.M.R.

of Evid. provides: "In all cases in which character or a trait of character of a person is an essential element of a charge, claim, or *defense*, proof may also be made of specific instances of his conduct." [Emphasis added.] The defendant made his trait or quality of passivity an essential element of his defense. Defining the word "character" as a person's normal or usual qualities or traits, the State under Rule 405(b) had the right to question the defendant about specific instances that showed the contrary.

I would affirm.