419 P.2d 966

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Mrs. John W. ROWELL, Defendant-Appellant.**

**No. 8008.**

Supreme Court of New Mexico.

Nov. 7, 1966.

Robert S. Skinner, Raton, for appellant.

Boston E. Witt, Atty. Gen., Gary O. O'Dowd, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

MOISE, Justice.

Appellant was charged with uttering a forged check in Raton, New Mexico, on May 9, 1963. Her defense was an alibi, based upon the testimony of two disinterested witnesses and her mother to the effect that Mrs. Rowell was not in Raton the day the crime was committed. Toward the end of appellant's case, the district attorney, in cross-examining appellant's mother and after having established by her that defendant's given name was Carol Madelaine, asked the following question:

> "I will ask you, Mrs. Stewart, whether or not you know that Carol Madelaine Rowell was on the ninth day of May, 1963, was convicted of forgery in Dumas, Texas?"

An objection to the question and a motion for mistrial was promptly made. The trial judge denied the motion for a mistrial, but sustained the objection to the question and admonished the jury not to consider it in arriving at a verdict.

Appellant did not take the witness stand. A verdict of guilty was returned by the jury, and this appeal is from the judgment and sentence based thereon.

It is appellant's position that the question was not only improper, but that asking it in the form that was done would certainly tend to prejudice the jury, and that no attempts to admonish the jury to forget the question could possibly erase the effects. We agree.

■ With certain qualifications, based upon reason and not here pertinent, it is generally held that proof of convictions of other and separate criminal offenses by the defendant is not admissible and that it is prejudicial error to admit such proof. We have so held in State v. Snyder, 28 N.M. 388, 212 P. 736; State v. Bassett, 26 N. M. 476, 477, 194 P. 867, and, more recently, in State v. Nelson, 65 N.M. 403, 338 P.2d 301. The reason for the rule is stated thus in 1 Wharton's Criminal Evidence (12th Ed.) 497, § 232:

"* * * Several reasons are given for the exclusion of evidence of independent, disconnected crimes. When a person is put on trial for an offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense, and not by evidence showing him guilty of other offenses wholly unconnected with the one charged, and the evidence on a trial should be confined to the question in issue. A man cannot be convicted of crime because he is a bad man generally or has committed other crimes for which he has not been punished, but proof of other crimes has a tendency to prejudice the minds of the triers against the accused and to predispose them to a belief in his guilt. In addition, there is the grave danger that the jury may be confused by the evidence relating to the distinct crime."

■ In the instant case, we are not concerned with the introduction of such evidence, but with the mere propounding of the question. In our view the same considerations which dictate exclusion of the evidence, as stated above, compel a similar holding upon the asking of a question such as was here propounded, under the circumstances here present. This is true when the question of prior convictions is asked a defendant himself, if the prosecutor is not proceeding in good faith or is not in position to refute a denial. See State v. Williams, 76 N.M. 578, 417 P.2d 62; 1 Wharton's Criminal Evidence (12th Ed.) 311, § 160. How much more serious it is to ask a question such as was asked here of a witness other than the defendant. Even if

the answer had been in the negative it would mean only that she did not know of the fact, not that defendant had not been convicted. The question here objected to could have no possible place in the trial. The purpose could have been nothing other than to arouse the prejudices of the jury against appellant. Courts, including ours, have been most vociferous in protecting persons accused of crime from the results of such interrogation. See State v. Cummings, 57 N.M. 36, 39, 253 P.2d 321. We quote from People v. Wells, 100 Cal. 459, 34 P. 1078, where a comparable question concerning prior forgeries was asked of a prosecution witness in a forgery trial:

" * * * What, then, was its purpose? Clearly, to take an unfair advantage of appellant by intimating to the jury something that was either not true, or not capable of being proven in the manner attempted. And the wrong was not remedied because the court sustained an objection to the question. Counsel undoubtedly knew beforehand that the objection would be sustained. * * * The first three of these questions are important mainly as leading up to the last one, the asking of which was utterly inexcusable and reprehensible. It would be an impeachment of the legal learning of the counsel for the people to intimate that he did not know the question to be improper, and wholly unjustifiable. Its only purpose, therefore, was to get before the jury a statement, in the guise of a question, that would prejudice them against appellant. If counsel had no reason to believe the truth of the matter insinuated by the question, then the artifice was most flagrant; but if he had any reason to believe in its truth, still he knew that it was a matter which the jury had no right to consider. The prosecuting attorney may well be assumed to be a man of fair standing before the jury, and they may well have thought that he would not have asked the question unless he could have proved what it intimated if he had been allowed to do so. He said plainly to the jury what Hamlet did not want his friends to say: 'As, "well we know;" or, "we could, and if we would;" or, "if we list to speak;" or, "there be, and if there might." ' This was an entirely unfair way to try the case; and the mischief was not averted because the court properly sustained the objection,—though we think it should have warned counsel against the course which he was taking,—and instructed the jury specially on the subject. The wrong and the harm was in the asking of the question. Of course, in trials of criminal cases, questions as to the admissibility of evidence will frequently arise about which lawyers and judges may fairly differ in opinion; and in such cases defendants must be satisfied when courts sustain their objections. But where the

prosecuting attorney asks a defendant questions which he knows, and every judge and lawyer knows, to be wholly inadmissible and wrong, and where the questions are asked without the expectation of answers, and where the clear purpose is to prejudice the jury against the defendant in a vital matter by the mere asking of the questions, then a judgment against the defendant will be reversed, although objections to the questions were sustained, unless it appears that the questions could not have influenced the verdict."

See also, Leo v. State, 63 Neb. 723, 89 N. W. 303; State v. Fournier, 108 Minn. 402, 122 N.W. 329; Gill v. People, 139 Colo. 401, 339 P.2d 1000.

We are convinced that the damage implicit in the asking of the question was in no way repaired by virtue of the fact that the objection was sustained. Neither was it overcome by the admonitions given the jury. We would be deluding ourselves if we were to believe that human nature being what it is, at least some of the jurors would not assume, because of the form of the question, that indeed appellant had been convicted of another forgery as stated by the district attorney. Whether or not she had was irrelevant in this case and, accordingly a reversal and new trial are inevitable.

Neither is a different result required by the rule of State v. Dendy, 34 N.M. 533, 285 P. 486, to the effect that striking evidence from the record cures any error, and that as a general rule an instruction to a jury not to consider certain evidence will overcome any prejudice that might have crept in. In that case it was recognized that " * * * instances may arise where evidence is so material and highly prejudicial that no instruction which the court may give will cure the error of its admission." Here, we are not dealing with evidence admitted and withdrawn. Rather, the question is one of prejudice to the defendant arising out of the asking of an improper question for the ostensible purpose of planting ideas or thoughts in the minds of the jury. This must have been the purpose because until and unless appellant took the stand the subject matter of the question could not have gotten into evidence under any recognized rules of criminal procedure. Under the circumstances, how could it be asserted with any degree of conviction that the original purpose, once accomplished, could be negatived by anything that transpired thereafter. Compare State v. Norman, 72 S.D. 168, 31 N. W.2d 258; Paulson v. State, 118 Wis. 89, 94 N.W. 771; People v. Robinson, 273 N.Y. 438, 8 N.E.2d 25; Usrey v. State, 35 Ala. App. 434, 48 So.2d 443. The following, which we quote from People v. Ozuna

(1963) 213 Cal.App.2d 338, 28 Cal.Rptr. 663, 666, we consider particularly pertinent:

"The crucial question is whether the admonition to the jury removed the harmful effect of the questioned evidence. We are convinced that it did not. It is self-deceptive to assume that the jurors could put out of their minds defendant's statement. 'Ex-convict' is a hateful word and the jurors would have read it in defendant's features as he sat before them as clearly as if it had been written there. The human mind is not so constructed as to permit a registered fact to be unregistered at will. Whether the fact of defendant's prior conviction probably had an influence upon the verdict is another matter.

\*   \*   \*

"The objectionable testimony was produced in order to strengthen the People's case by generating prejudice in the minds of the jurors. It is our opinion that its use for that purpose was not only serious misconduct but was fraught with such harm to defendant as to be irremediable. We would not be warranted in affirming the judgment unless we felt assured the court's admonition removed the obvious prejudice to the defense. In view of the entire record we cannot say that the admonition probably accomplished that purpose."

We do not consider anything said in State v. McKinzie, 72 N.M. 23, 380 P.2d 177, or in State v. Fernandez, 56 N.M. 689, 248 P.2d 679, dictates any different result than is here reached under the facts before us.

We would also add that we are unconvinced by the State's arguments that the question was proper to show a common scheme or plan, and accordingly had bearing on the guilt or innocence of the accused as approved in State v. Peke, 70 N.M. 108, 119, 371 P.2d 226. As a matter of fact, as already noted, the question was in a grossly improper form to prove anything. It could not possibly establish or accomplish anything but prejudice.

We are impressed that this is a case where the following quotation from Miller v. Territory of Oklahoma (C.C.A.8) 149 F. 330, 339, 9 Ann.Cas. 389, announced in 1906, would seem to be appropriate:

"\*   \*   \* The foregoing incident strikingly illustrates where the responsibility for the miscarriage of justice in criminal prosecutions should sometimes be placed, instead of imputing the reversal of convictions by the appellate courts to what is popularly termed 'mere technicalities.' The zeal, unrestrained by legal barriers, of some prosecuting attorneys, tempts them to an insistence upon the admission of incompetent evidence, or

getting before the jury some extraneous fact supposed to be helpful in securing a verdict of guilty, where they have prestige enough to induce the trial court to give them latitude. When the error is exposed on appeal, it is met by the stereotyped argument that it is not apparent it in any wise influenced the minds of the jury. The reply the law makes to such suggestion is: that, after injecting it into the case to influence the jury, the prosecutor ought not to be heard to say, after he has secured a conviction, it was harmless. As the appellate court has not insight into the deliberations of the jury room, the presumption is to be indulged, in favor of the liberty of the citizen, that whatever the prosecutor, against the protest of the defendant, has laid before the jury, helped to make up the weight of the prosecution which resulted in the verdict of guilty."

In view of our disposition of the point discussed above there is no need for us to consider and pass on appellant's second point.

The cause is reversed and remanded with instructions to grant a new trial.

It is so ordered.

CHAVEZ, J., and WALDO SPIESS, J., Court of Appeals, concur.