495 P.2d 380

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Ivey JONES, Defendant-Appellant.**

**No. 788.**

Court of Appeals of New Mexico.

March 10, 1972.

W. J. Schnedar, Frazier, Cusack & Schnedar, Roswell, for defendant-appellant.

David L. Norvell, Atty. Gen., Prentis Reid Griffith, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of robbery. Section 40A–16–2, N.M.S.A.1953 (Repl.Vol. 6). He complains (1) of the photographic identification procedure employed by the police and (2) of the basis on which the trial court ruled that the procedure was not improper.

Marvin Jones was the night attendant at a service station. His wife and baby were also at the station. At approximately 2:00 a. m., a man came to the station and obtained change for a dollar. Shortly thereafter, he returned with a woman. The woman grabbed the baby, stated that it was a holdup and said: " 'Give me the money or I will kill the baby.' " Marvin Jones and his wife described the man and woman by height, weight, dress and race (Negro). The man was also described as wearing a goatee.

*The photographic identification procedure.*

The detective testified that he showed various pictures to Marvin Jones and his wife some eight or more times. Defendant states they were unable to make positive identification until the last showing. At trial, the wife testified that she identified defendant at the first showing. Defendant contends the repetitive showing of pictures was highly suggestive and that the wife's testimony at trial shows " * * * that the defects in the identification procedure are now irreparable." This claim fails to consider all of the pertinent facts.

The detective testified that he showed a total of 8 to 10 pictures to Marvin Jones and his wife on the day of the robbery. Three or four were women; the rest, men. The pictures were selected on the basis of the general physical description of the robbers. The victims selected pictures of two

or three men, but eliminated all but the picture of defendant. They referred to defendant's picture as "being primarily the one," but made no positive identification.

Later that day, the detective added to these photographs the picture of another suspect. Upon this second viewing, the victims eliminated the picture which had been added and stated that defendant's picture looked more like the male robber than any other picture they had seen.

Thereafter, the detective obtained information about the female robber and included, for the first time, a picture of the female who later admitted to being a participant in the robbery. The third viewing occurred, at which time the victims "definitely decided" the new picture was that of the female robber. There is nothing in the record concerning defendant's picture at this third viewing.

Thereafter, there were several more viewings of pictures. Other photographs were included and at times defendant's picture was not included in the pictures being viewed. Through the viewings, which were "eight times, or more," Marvin Jones and his wife were " * * * equally positive that Ivey [defendant] was the one. * * * " At the preliminary hearing, the wife testified she did not identify defendant "for sure" until the last viewing which occurred when she was asked to assist in the preparation of a "composite picture" of the male robber. As to the identification of defendant during the course of the various viewings, the detective testified the victims did not become " * * * more positive, they would refer to the picture stating that looked more like him."

During the course of the viewings, defendant had been questioned by the police. At the questioning, the detective told defendant that the victims were not positive as to their identification; that " * * * they [the victims] had picked this picture out and that was the reason we were talking at that time."

There is nothing in the record indicating that the detective suggested that defend-

ant's picture be selected as the male robber. According to the wife, when she and her husband looked at a picture the detective would comment that the person shown had been in trouble before, or was mean, but that the detective gave no physical description of the person shown and only asked if the victims could identify the person shown in the picture. Not until the wife made her positive identification at the last viewing did the detective reveal the name of the person [defendant] whose picture the victims had characterized as looking most like the male robber at the first viewing. The victims never identified any other person. According to the detective: "They came to a conclusion that that was the picture."

The identification attacked is that made by the wife; Marvin Jones did not testify at trial. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) holds that each case must be considered on its own facts and states:

"* * * convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *"

See State v. Gilliam, 83 N.M. 325, 491 P.2d 1080 (Ct.App.1971); State v. Baldonado, 82 N.M. 581, 484 P.2d 1291 (Ct.App.1971).

■ Under this point we only consider the phrase "impermissibly suggestive." The only suggestiveness in the facts outlined above is the inclusion of defendant's photograph among others in viewings which took place over a period of approximately two weeks. We decline to hold that this was impermissible because: (1) defendant's photograph was singled out on the first viewing which occurred on the day of the crime; (2) no person other than defendant was ever identified as being the male robber; (3) there is noth-

ing indicating the detective influenced the selection of defendant's picture or caused the initial tentative identification to develop into a positive one; (4) part of the viewings were concerned with the female robber; and (5) not all the viewings included defendant's picture. Specifically, the repetitive viewing, in itself, without more, is insufficient for us to hold as a matter of law that the procedure followed by the detective was impermissibly suggestive. Compare State v. Clark, 80 N.M. 91, 451 P.2d 995 (Ct.App.1969), rev'd on other grounds, 80 N.M. 340, 455 P.2d 844 (1969).

*Basis for the trial court's ruling.*

■ Defendant's claim, that the photographic identification procedure was improper, was to be " * * * evaluated in light of the totality of surrounding circumstances. * * *" Simmons v. United States, supra. The trial court considered the surrounding circumstances to include the totality of the identification of defendant. The total circumstances before the trial court in ruling on defendant's claim included, in addition to the testimony reviewed under the first point, the testimony of the female robber. She had testified as to details of the robbery and identified defendant as the male robber.

Defendant asserts the trial court erred in considering the female robber's identification. He contends the circumstances to be considered are limited solely to testimony concerning the photographic identification process. Defendant's view would eliminate consideration of circumstances "surrounding" that procedure.

It is unnecessary to decide this contention because we have held the photographic identification procedure was not impermissibly suggestive. However, we note that the ultimate question is whether there was a "substantial likelihood of irreparable misidentification" and that the female robber's identification is material in deciding that question. See United States ex rel. Springle v. Follette, 435 F.2d 1380 (2nd Cir.

1970), cert. denied Springle v. Zelker, 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 331 (1971).

The judgment and sentence are affirmed.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.