526 P.2d 436

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Harold MILTON, Defendant-Appellant.**

**No. 1499.**

Court of Appeals of New Mexico.

Aug. 21, 1974.

Sutin, J., concurred in part and dissented in part with opinion.

Larry N. Smith, Moore & Smith, Santa Fe, for defendant-appellant.

David L. Norvell, Atty. Gen., Ralph W. Muxlow, II, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Convicted of armed robbery, defendant appeals. Section 40A–16–2, N.M.S.A.1953 (2d Repl. Vol. 6). The issues concern: (1) photographic identification; (2) requested instruction concerning identification; (3) admission of a copy of a prisoner's letter; and (4) mistrial because of non-responsive answers of witnesses. We affirm.

*Photographic Identification*

By motions for directed verdict at the close of the State's case-in-chief and at the close of all the evidence, defendant challenged the sufficiency of the evidence identifying defendant as the robber of the service station. Defendant claimed the only witness identifying defendant was Jimmy Baca, that Baca made the identification after being shown a photograph, that the circumstances of the identification were impermissibly suggestive. He claimed the evidence as to Baca's photographic identification was erroneously admitted and absent that evidence there was insufficient identification evidence for the case to go to the jury. These contentions are renewed on appeal. He relies on Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968).

The claim is factually inaccurate. There is circumstantial evidence, sufficient to sustain the conviction, that defendant was the robber. This includes evidence placing defendant and his distinctly colored car at the service station on the afternoon before the robbery and evidence that the robber departed the scene in this car after the robbery. This evidence also includes the description of the robber given by Baca and defendant's own statement against his interest.

The claim that Baca's photographic identification was in impermissibly suggestive circumstances is also without merit. Nothing indicates the police suggested the identification. Baca was shown a photograph of a man and a woman. An officer

asked Baca, "Is this the man?" Baca said, "Yeah, that is him." The identification was a couple of days after the robbery. The factual basis for the claim of an impermissively suggestive identification procedure is: (1) that Baca was shown only one picture, and that this picture showed defendant, a Black person, with a white female; and (2) Baca had "little time and poor circumstances under which to observe the thief."

Simmons v. United States, supra, states that showing only one photograph increases the danger of an incorrect identification, but it does not state that an identification after the showing of one photograph renders the identification testimony inadmissible. There is nothing indicating the white female in the photograph in any way influenced Baca's identification. The contention that the time and circumstances of the robbery limited Baca's observation of the robber, thereby weakening his identification is factually inaccurate. The robber entered the station and conversed with Baca and Gutierrez, a co-worker. He then held a gun on Gutierrez and directed Baca to open the cash register. The robber forced Gutierrez and Baca into a backroom, then returned for Baca to fill out a credit card slip for a service station customer after the robber supplied gas to the customer. The robber also required Baca to fill the robber's car with gasoline. This occurred in daylight over a period of ten to fifteen minutes.

At trial, Baca identified defendant as the robber.

Simmons v. United States, supra, states that a conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In this case there was no impermissibly suggestive identification procedure and nothing suggesting a misidentification. State v. Jones, 83 N.M. 600, 495 P.2d 380 (Ct.App.1972); State v. Gilliam, 83 N.M. 325, 491 P.2d 1080 (Ct.App.1971).

## Requested Instruction Concerning Identification

■ Defendant requested the trial court to instruct that it was for the jury to determine whether the photograhic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. We do not concern ourselves with whether the requested instruction properly states the law concerning photographic identification. The request was properly refused because the question of improper photographic identification is a matter for the trial court to decide in ruling on the admissibility of an in-court identification. United States v. Sutherland, 428 F.2d 1152 (5th Cir. 1970), cert. denied, 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972); see State v. Aguirre, 84 N.M. 376, 503 P.2d 1154 (1972).

## Evidence—Admission of a Copy of Prisoner's Letter

■ A letter written by defendant while in jail was examined by the sheriff. A copy was made of the letter; the original was mailed to the addressee. The copy was admitted into evidence. One sentence from the letter was read to the jury. This sentence was an admission against defendant's interest. The jury was not informed as to other portions of the letter.

The objection before the trial court, renewed here, is that the letter was a privileged communication. The factual basis for this contention is that the trial court had ordered a psychiatric evaluation, that Dr. Lowe participated in the evaluation and the letter involved was addressed to Dr. Lowe.

There are additional facts. The evaluation had been ordered because of defendant's "insanity" defense. The evaluation was completed by October 18, 1973, defendant had been returned to the county jail, and the letter was written from the jail on October 29, 1973. These facts, together with

the contents of the letter make it doubtful that the letter was a communication "made for the purposes of diagnosis or treatment of his [defendant's] mental or emotional condition." Paragraph (b) of § 20-4-504, N.M.S.A.1953 (Repl. Vol. 4, Supp. 1973). We need not, however, decide this question.

Paragraph (d)(2) of § 20-4-504, supra, excepts a court-ordered examination from the psychotherapist-patient privilege. It reads:

"If the judge orders an examination of the mental or emotional condition of the patient, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise."

If the letter was a communication for the purpose of diagnosis or treatment, it was a communication made in the course of the court-ordered examination. It was not privileged under § 20-4-504, supra, because the trial court had not ordered otherwise. The privilege claim is based entirely on § 20-4-504, supra.

There being no privilege, admission of a copy of the letter and reading one sentence from the letter to the jury was not error.

*Mistrial—Non-Responsive Answers*

■ (a) The sentence from defendant's letter, read to the jury, was: "I am guilty of everything that I have been charged with here."

Cross-examining the sheriff, defense counsel asked: "You don't know what if anything that Mr. Milton has done here, do you?" The sheriff answered: "No, only what is on his FBI report." Defendant moved for a mistrial because the answer was not responsive to the question. After argument of counsel outside the presence of the jury, the motion for mistrial was denied. Thereafter, in the presence of the jury, the sheriff admitted that on the basis of his own knowledge, he could only guess as to the meaning of the letter.

Defendant claims the reference to an FBI report implies that defendant is a "criminal." Defendant then reminds us that, generally, evidence of crimes independent of the offense for which defendant is being tried is inadmissible. The State's response is that the reference to an FBI report is ambiguous, that it could mean either the offense being tried or other crimes. We agree the remark is ambiguous.

The issue is whether the court erred in denying a mistrial. A motion for a mistrial is addressed to the discretion of the court and is reviewable only on the basis of an abuse of discretion. State v. Thurman, 84 N.M. 5, 498 P.2d 697 (Ct.App.1972); State v. Martinez, 83 N.M. 9, 487 P.2d 919 (Ct.App.1971). Since the nonresponsive answer was ambiguous, we cannot say the trial court abused its discretion in denying a mistrial. State v. Jamerson, 85 N.M. 799, 518 P.2d 779 (Ct.App.1974).

■ (b) The State, directly examining a detective, asked if the detective obtained an arrest warrant on the basis of certain information. The detective's answer was not responsive. The answer referred to inquiries of the police department in Santa Fe, and concluded with: "they were looking for him for burglary." The prosecutor instructed the witness to confine himself to answering the question. The State concluded its direct examination with one additional question.

Thereafter the witness was cross-examined and examined on redirect. After examination of the witness was concluded (some 6 typewritten pages of the transcript later), defendant moved for a mistrial on the basis of the detective's non-responsive answer.

Defendant recognizes that his motion was untimely. He would avoid the effect of an untimely motion on the basis that an objection on his part would have magnified the "error." This does not excuse the failure to make a timely objection. State v. Carmona, 84 N.M. 119, 500 P.2d 204 (Ct.

App.1972) ; State v. Polsky, 82 N.M. 393, 482 P.2d 257 (Ct.App.1971), cert. denied, 404 U.S. 1015, 92 S.Ct. 688, 30 L.Ed.2d 662 (1972). By lack of a timely objection, defendant waived the claimed error.

Defendant also claims cumulative error. There is no basis for application of the doctrine in this case. State v. Mireles, 84 N.M. 146, 500 P.2d 431 (Ct.App.1972).

The judgment and sentence is affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., concurs in part and dissents in part.

SUTIN, Judge (concurring in part and dissenting in part).

I concur and dissent.

(1) *Defendant's requested instruction concerning identification needs clarification.*

The trial court refused defendant's requested instruction on identification which reads as follows:

You are instructed that in determining the question of identity in this case, you should take into consideration the manner in which such identification was made. If you should find from the evidence in this case that the defendant was first identified by photographic identification then you must determine whether or not the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The majority opinion misstates the law in affirming the denial of the request. It says:

We do not concern ourselves with whether the requested instruction properly states the law concerning photographic identification. The request was properly refused because the question of improper photographic identification is a matter for the trial court to decide in ruling on the admissibility of an in-court

identification. United States v. Sutherland, 428 F.2d 1152 (5th Cir. 1970).

* * *

*Sutherland* does not stand for the foregoing statement of law. The district court instructed the jury on in-court identification *that the jury must disregard the photographic identification.* The appellate court reversed because the trial judge had clearly ruled that the in-court identification (1) was "impermissibly suggestive" and (2) there was "substantial likelihood of irreparable misidentification." The court then said:

Since the district judge had clearly ruled that both elements of *Simmons* were present in the instant case, we hold that he was in error in not excluding the in-court identification.

An instruction was given but it was held erroneous. The appellate court was concerned with whether the instruction properly stated the law. Since a new trial was granted, the court suggested the procedure to follow. If the district court finds as a matter of law that the photographic identification was "impermissibly suggestive" and there was "substantial likelihood of irreparable misidentification," then in-court identifications must be excluded so that no instruction is necessary. If the district court does not so find, then the in-court identification is admissible and the jury may be instructed on in-court identification.

In the instant case, trial court did not rule on in-court identification as a matter of law. When the instruction was tendered, the trial court ruled:

It is the opinion of the court that defendant's requested instruction is not proper nor is it a complete statement of the law as to what should be included in this instruction. It is not up to the court to modify a submitted instruction by the defendant, it is up to the defendant to submit proper instruction as to the matters involved.

It is obvious that the trial court did not rule as a matter of law that the two-pronged test set forth in *Sutherland* was

proven by in-court identification. It did not like the language of the instruction. I agree.

For a proper instruction on identification, see United States v. Barber, 442 F.2d 517, 526, 528 (3d Cir. 1971); cert den., 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971).

The time has come when we should determine the place of an identification instruction in criminal law. The reason is that the greatest single injustice that can arise out of our system of criminal law is the conviction of the wrong man through a mistake in identity. United States v. Evans, 484 F.2d 1178, 1187 (2nd Cir. 1973).

It is difficult to determine whether identification is an element of the offense, substantive in effect, or merely cautionary, to be given within the discretion of the court. Authority seems to be divided.

An identification instruction has been held to be a cautionary instruction, the giving of which rests in the sound discretion of the trial court. United States v. Evans, supra; United States v. Barber, supra; United States v. Sutherland, supra.

In Macklin v. United States, 133 U.S. App.D.C. 139, 409 F.2d 174, 178 (1969), the court said:

> We think that now, after the Supreme Court has focused on identification problems in its 1967 Wade-Gilbert-Stovall trilogy, it is even more imperative that the trial courts include, as a matter of routine, an identification instruction.

In United States v. Fernandez, 456 F.2d 638 (2nd Cir. 1972), the district court instructed on identification, but refused to charge that errors in photographic identification can occur and that these may affect a subsequent in-court identification. In reversing, the appellate court said:

> . . . [W]e would think it reasonable that a properly drafted instruction, drawing particularly on Mr. Justice Harlan's language in *Simmons* should be given if requested. Whether failure to do so would constitute reversible error would depend on the circumstances.

See also, Salley v. United States, 122 U. S.App.D.C. 359, 353 F.2d 897 (1965). Many other cases can be found.

The better rule appears to be that in each case where photographic identification is first made, the trial court should, if requested, properly instruct the jury on photographic identification. It does not harm the state. It does protect the rights of the accused. It leaves the weight to be given to photographic identification in the hands of the jury where it belongs.

Our Supreme Court has held that the failure to give a cautionary instruction was reversible error. State v. Dodson, 67 N.M. 146, 353 P.2d 364 (1960). If this decision were followed today, we would be obliged to determine whether the failure to instruct was reversible error.

I believe a proper instruction should have been given, but I do not favor reversal. At the close of the state's case, the defendant announced in the presence of the court: "I want to plead guilty." This plea was not accepted. The defendant was proven guilty beyond all reasonable doubt. Under the circumstances in this case, there was no reasonable doubt as to photographic identification of the defendant as the person who committed the offense.

The failure to give defendant's requested instruction on photographic identification was not reversible error.

(2) *Admission of Portion of defendant's letter in evidence needs clarification.*

The portion of the letter read to the jury was "I am guilty of everything that I have been charged with here."

The letter was dated October 29, 1973. The trial began November 14, 1973. If this extrajudicial confession was admissible, the defendant attempted to write himself into the penitentiary.

The majority opinion limits admissibility to lack of privilege in a court-ordered examination because the defendant limited this point in this brief.

The majority opinion is mistaken in applying Rule 504(d)(2) of the Rules of

Evidence. Rule 504(b) and Rule 504(d)(2) called "psychotherapist-patient privilege" are not applicable because (1) the letter was not a communication "made for the purpose of diagnosis or treatment of his mental or emotional condition" and (2) the letter was not written in the course of a judge-ordered examination.

The defendant was released from the Las Vegas Medical Center on October 18, 1973, ten days before the letter was written. The record is silent thereafter on the psychiatric evaluation.

The letter was an appeal to the doctor to arrange a meeting between defendant and the district attorney to give defendant an opportunity to assist in stopping crime in New Mexico.

The majority opinion concludes:

> There being no privilege, admission of a copy of the letter and reading one sentence from the letter to the jury was not error.

This is an ipse dixit statement of the law. It means that the state may introduce only the inculpatory statements of the confession and exclude the exculpatory statements made. "As a general rule, the whole of a confession should be introduced, unless parts of it, reflecting the commission of other crimes, for example, can be excluded without damaging the whole." Hoover v. Beto, 467 F.2d 516 (5th Cir. 1972). "In the case of confessions it is the general rule that the whole of a confession must be admitted." Bell v. State, 234 Md. 254, 198 A.2d 895 (1964), and "the accused may insist upon it being offered in its entirety." Hadder v. State, 238 Md. 341, 209 A.2d 70 (1965); United States v. Wenzel, 311 F.2d 164 (4th Cir. 1962). " * * * [I]f any part is omitted, the accused is entitled to supply it." 3 Torcia, Wharton's Criminal Evidence, 13 ed. § 671 (1973).

The state sought to have the sheriff read to the jury part of one sentence on the confession of guilt. The defendant objected because the entire letter was introduced in evidence and "it speaks for itself. The State introduced it and they are bound by it, so that it speaks for itself. It doesn't have to be read by the sheriff. Put it to the jury." The trial court overruled the objection and the sheriff read only the inculpatory partial sentence of the confession.

Where the state produces a part of the confession only, the defendant is entitled to prove the remainder or any part of it, which is explanatory of, or connected with, the part offered by the state. 23 C.J.S. Criminal Law, § 820. "The reason appears to be that defendant should not be deprived of the advantage of any explanatory or favorable statements contained in it." State v. Crisman, 244 Iowa 590, 57 N.W.2d 207 (1953).

The confession was admitted in evidence. "[T]he weight to be given the several parts thereof, inculpatory and exculpatory, is for the trier of the facts to determine." Hadder v. State, supra.

The trial court erred in not submitting the entire letter to the jury. Reversal is not sought because if the entire letter were excluded from evidence, I have no doubt the jury would have reached the same result. The admission of guilt in the letter was not prejudicial. Sambolin v. State, 215 Tenn. 569, 387 S.W.2d 817 (1965).

(3) *Interception by sheriff of defendant's letter was wrongful.*

The sheriff was questioned as follows:

Q. What is the general practice of your office with regards to the letters written by prisoners?

A. We censor the mail, incoming and outgoing.

On cross-examination, the sheriff testified as follows:

Q. When did you tell Mr. Milton about your rules and regulations of the jail, Sheriff?

A. I didn't tell him.

A search of the statutes and judicial law has not yet disclosed the right or duty of a sheriff to censor incoming and outgoing mail. No regulations pertaining thereto

were shown in evidence. It was only a practice, notice of which was not told defendant. For duties of the sheriff, see § 15–40–2, N.M.S.A. 1953 (Repl.Vol. 3). For jails under control of sheriffs, see § 42–2–1 et seq., N.M.S.A. 1953 (2nd Repl.Vol. 6).

It can be presumed that if defendant was informed that the sheriff would censor his mail, he would not have written the letter with inculpatory statements in it. Whether this event created a voluntary or involuntary confession, I am not yet prepared to say. Its importance follows:

(4) *A confession admitted in evidence without a preliminary hearing violates Art. II, § 15 of the New Mexico Constitution.*

Article II, § 15 of the New Mexico Constitution provides in part:

No person shall be compelled to testify against himself in a criminal proceeding * * *

This provision excludes from evidence involuntary confessions. The trial court has a duty to determine, outside the presence of the jury, and as preliminary matter, that the confession, prima facie, at least, possesses all the earmarks of voluntariness. State v. Armijo, 18 N.M. 262, 267, 135 P. 555 (1913).

In State v. Armijo, 64 N.M. 431, 437, 329 P.2d 785, 789 (1958), the court said:

Any time, a defendant makes it known he has something to say touching the integrity of a confession claimed to have been made by him, however incredible it may appear to the trial court, the judge must hear him. He has no choice. In declining to do so, the court committed reversible error.

"Whether or not the contents of the alleged confession should go to the jury is in the first instance a question of law for the determination of the court." If the court determines the confession is voluntary as a matter of law, "The jury, then, under proper instructions, determines what weight, if any, shall be given to the confession." State v. Ascarate, 21 N.M. 191, 153

P. 1036 (1915), appeal dismissed, 245 U.S. 625, 38 S.Ct. 8, 62 L.Ed. 517 (1917); Pece v. Cox, 74 N.M. 591, 396 P.2d 422 (1964). For a collection of the cases on this subject, see State v. Barnett, 85 N.M. 301, 512 P.2d 61 (1973); State v. LeMarr, 83 N.M. 18, 487 P.2d 1088 (1971). In the instant case, defendant, in stating objections during a discussion with the court, said " * * * there again they are trying to treat it as voluntary confession that was voluntarily made." The trial court did not, at a preliminary hearing, hold as a matter of law that the confession was voluntarily made, and in submitting a portion to the jury, the trial court did not instruct the jury on the weight to be given the confession. This is reversible error. State v. LaCour, 84 N.M. 665, 506 P.2d 1212 (Ct. App.1973); State v. Gurule, 84 N.M. 142, 500 P.2d 427 (1972); State v. Gruender, 83 N.M. 327, 491 P.2d 1082 (Ct.App.1971) dissent.

(5) *An involuntary confession admitted in evidence violates Art. II, § 18 of the New Mexico Constitution.*

Article II, § 18 of the New Mexico Constitution provides that:

No person shall be deprived of life, liberty or property without due process of law; * * *

In State v. Cranford, 83 N.M. 294, 491 P.2d 511 (1971), the court said:

It is basic that in a criminal case, a defendant is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for truth or falsity of the confession, *and even though there is other ample evidence to support the conviction.* (Emphasis added).

The continued citation of cases is burdensome. See State v. Burk, 82 N.M. 466, 483 P.2d 940 (Ct.App.1971).

This case should be remanded to the trial court to determine, upon a hearing, whether the confession was voluntary or involuntary. Then we can determine wheth-

er the interception of the letter by the sheriff converted the letter into an involuntary confession.

(6) *Non-responsive answers which attribute arrests of defendant are reversible error.*

The majority opinion holds that "what is on his F.B.I. report" is an *ambiguous* answer to a question propounded to a sheriff; that being *ambiguous,* the trial court did not abuse its discretion in denying defendant's motion for a new trial.

The word "ambiguous" has not been defined in New Mexico. It has several meanings, one of which is that "what is on his F.B.I. report" can be understood in more ways than one; that the phrase is doubtful and uncertain; that it has a double meaning; that it is open to various interpretations. 3A C.J.S. Ambiguous, p. 412. Any person sitting on a jury knows that an "F.B.I. report" has one meaning, i. e., the defendant has had arrests or convictions of crime. It is not ambiguous.

The majority opinion holds that the error in the following question by the district attorney and answer by a lieutenant on the police force *was waived by lack of a timely objection.*

Q. Based on this information did you obtain an arrest warrant?

A. We called Santa Fe and the police department there . . . gave them the vehicle description . . . and description of the individual . . . and it fit the same description of the subject sitting there, *but they were looking for him for burglary.*

Q. If you would just confine yourself to answering the question. (Emphasis added).

Both were non-responsive answers to questions. To avoid the prejudicial affect of these answers, the majority opinion substitutes apologies for an answer on the merits. This is a common method of avoiding reversible error.

The general rule is that evidence of collateral offenses, though similar in character, arc inadmissible in a criminal prosecution to establish a specific crime and it is prejudicial error to admit such proof. State v. Velarde, 67 N.M. 224, 354 P.2d 522 (1960); State v. Rowell, 77 N.M. 124, 419 P.2d 966 (1966); State v. Garcia, 83 N.M. 51, 487 P.2d 1356 (Ct.App.1971). This rule extends to proof of prior arrests of the accused.

In Lucas v. State, 378 S.W.2d 340 (Tex. Cr.App.1964) the court held that a mistrial should have been granted by the trial for answers on prior arrests for burglary and theft where defendant was convicted of the unlawful sale of marijuana. For other prior arrest cases, see Paul v. State, 47 Ala.App. 115, 251 So.2d 246 (1971); Bolin v. State, 472 S.W.2d 232 (Tenn.Cr.App. 1971); Lucas v. State, 378 S.W.2d 340 (Tex.Cr.App.1964); Robedeaux v. State, 94 Okl.Cr. 171, 232 P.2d 642 (1951).

In *Robedeaux,* Officer Crowder, a witness for the state, had been asked by the court:

Q. Did you know him, the defendant, prior to this date?

A. Yes, sir. I had arrested him before.

In reversing, the court said:

Of course the officer knew that the answer was improper where there was not a conviction. * * * The court on objection had admonished the jury not to consider this answer. Nevertheless, viewed in connection with the accusing question of the county attorney, such interrogation was prejudicial in the absence of the county attorney offering proof that defendant in fact had been convicted.

In the instant case, "what is on his F.B. I. report," and "they were looking for him for burglary" constitute reversible error because these phrascs implant within the minds of the jury that defendant was full of criminality, either by way of arrest or by conviction, or reference to criminal conduct.