This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                     NO.   29,339

**CARL A. VIGIL,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen Pfeffer, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

In affirming Carl Vigil's (Defendant) convictions for battery on a household member, we examine how the phrase "continuing personal relationship" defines what a "household member" is for purposes of enhancing the penalty for a battery committed upon a "household member." Although we find aspects of each party's trial and appellate practice unsettling, we cannot conclude that any error exists sufficient to warrant reversal of Defendant's convictions. Consequently, we affirm Defendant's convictions and sentence.

**I.      BACKGROUND**

According to Victim's undisputed testimony, she and Defendant became acquainted in a homeless shelter. Over a period of two years, they occasionally engaged in drinking and sexual intercourse. On February 1, 2007, Defendant and Victim checked into the Santa Fe Motel 6. This Motel 6 was a place known to police officers as a place where transients stay in Santa Fe.

Defendant and Victim began drinking whiskey from a bottle he had. While watching a boxing match, Defendant became angry and began punching Victim. She blacked out, which she ascribed to her drinking too much. Victim did not recall what happened after that. At some point, Victim came to, put her clothes on, and called the police. She indicated that as she made this call, Defendant began hitting her on the head with the telephone. As the police and paramedics arrived, she answered the door

with the disconnected telephone handset in her hand and told them that she had been assaulted by her "boyfriend," who had struck her with a bottle and kicked her in the head. An officer testified that the door was cracked open when he arrived, and it appeared a fight had taken place. Victim had fresh abrasions on her face and a bleeding cut. The paramedic noted that, on the way to the hospital, she was unresponsive twice due to what the paramedic believed to be petit mal seizures.

Victim called Defendant her "boyfriend," and witnesses also testified to her use of the term at the scene of the crimes. At trial, Victim testified that she "didn't know" Defendant and that, as far as she was concerned, their relationship was "just a sexual relationship" in which she "used him for sex." Owing to these various statements, we draw no conclusions from Victim's use of the word "boyfriend." Defendant argues that the statutory term "household member," by definition, connotes a frequency or quality of companionship not reflected by the facts in this case.

## II. DISCUSSION

### A. Convictions for Battery on a Household Member Did Not Violate Double Jeopardy

Defendant challenges his two convictions on two counts of aggravated battery on a household member, alleging that they represent unitary conduct arising from a single course of events and intent and are not separable offenses. Defendant primarily argues that double jeopardy prevents his suffering two convictions owing to his

"unitary conduct." We review Defendant's double jeopardy claim de novo. *State v. Swick*, 2010-NMCA-098, ¶ 19, 148 N.M. 895, 242 P.3d 462, *cert. granted*, 2010-NMCERT-010, 149 N.M. 65, 243 P.3d 1147. "Conduct is unitary if it is not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *State v. LeFebre*, 2001-NMCA-009, ¶ 17, 130 N.M. 130, 19 P.3d 825. We view the evidence in the light most favorable to the State and resolve all conflicts and indulge all permissible inferences in favor of the verdict. *State v. Johnson*, 2004-NMSC-029, ¶ 54, 136 N.M. 348, 98 P.3d 998. The evidence given at trial sufficiently establishes that Defendant's conduct was not unitary.

Defendant was charged with aggravated battery against a household member and with simple battery against a household member. The jury convicted Defendant of simple battery against a household member as a lesser-included offense.

It is clear from the evidence that Defendant committed two batteries on Victim. The testimony indicated that Victim was attacked on the bed early in the evening in the course of an argument, lost consciousness, and did not remember anything after that. When Victim regained consciousness, she discovered that she was unclothed. She then got dressed and tried to call 911, at which point, Defendant began to hit her over the head with the telephone. This constitutes facts from which the jury could properly conclude two batteries occurred, separated in time by Victim's

4

unconsciousness and by Defendant's employing his fists and the telephone in two separate incidents. Thus, Defendant's conduct was not unitary.

B.      Victim Qualifies as a "Household Member"

Defendant next contends that his convictions should not be enhanced because Victim was not a "household member," which is a term connoting a "continuing personal relationship" as stated by NMSA 1978, Section 40-13-2(D) (1995) (current version at Section 40-13-2(A) (2008) (amended 2010). We review Defendant's claim with regard to what constitutes a "household member" de novo as a matter of statutory construction. *State v. Wilson*, 2006-NMSC-037, ¶ 10, 140 N.M. 218, 141 P.3d 1272 (internal quotation marks and citation omitted). Our Supreme Court stated that it looked to relationships of gravity and significance and allowed the phrase "to encompass similarly enduring relationships between persons who are not related, co-habiting[,] or jointly raising a child[,]" but stopping short of "every romantic relationship, however brief." *Id.* ¶ 13. The Supreme Court held that a relationship of a week's duration and described equivocally as something short of "boyfriend and girlfriend" was insufficient to establish a relationship of sufficient gravity to satisfy the statute. *See id.* ¶ 14. It declined to further define the parameters of a continuing personal relationship. *Id.* ¶¶ 13-14. In *State v. Fike*, we regarded a terminated relationship as a sufficiently "continuing personal relationship" by virtue of

cohabitation for several weeks. 2002-NMCA-027, ¶ 19, 131 N.M. 676, 41 P.3d 944. Similarly, in *State v. Quintana*, 2009-NMCA-115, ¶ 24, 147 N.M. 169, 218 P.3d 87, we held that the phrase had a "broader meaning" than a relationship that had ended a week before the battery occurred.

Here, despite the relationship consisting of primarily occasional meetings for sex and drinking, it is the longevity and regularity of the relationship that convinces us the statute and jury instruction gave the jury an adequate standard by which to decide. From these facts, we conclude that the evidence was sufficient from which the jury could have concluded that a "continuing personal relationship" existed between Defendant and Victim.

**C.      Other Issues Not Meriting Reversal**

Defendant seeks to have us reverse his convictions for various errors he asserts were committed by the prosecution that prejudiced him, as well as errors by his own defense counsel, which he maintains resulted in receiving ineffective assistance of counsel, so as to deprive him of a fair trial. We address each in turn.

**1.      Ineffective Assistance**

Defendant asks us to hold that the fact his defense counsel did not seek to obtain Victim's apparently voluminous psychological records and did not subpoena the treating physician and nurse from the night of the incident deprived him of

effective assistance of counsel. There is a two-fold test for proving ineffective assistance of counsel. The defendant must show that (1) defense counsel's performance fell below that of a reasonably competent attorney, and (2) the defendant was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof is on the defendant to prove both prongs. *Id.* "The test for ineffective assistance of counsel is whether defense counsel exercised the skill of a reasonably competent attorney." *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384. Our analysis begins by presuming counsel to be competent, and the facts show such a presumption to be justified here. *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127.

Defendant's desire was "to show that [Victim] suffered from such mental illnesses and exhibited bizarre behavior, which likely would have affected her credibility with the jury." Defendant asserts that the treating doctors at the hospital "would have testified regarding her intoxicated state, and what her injuries resulted from, along with the effects the alcohol had on her cognitive abilities." Defendant's arguments placed against the facts of the case fail to demonstrate any prejudice to him in light of the evidence that established Victim's personal background, intoxication, occasional lapse into seizure, and lack of memory of the incident.

We find no conduct by counsel that violates the standards for representation by which we evaluate such claims. Defense counsel apparently received much information of exactly the type that Defendant now complains was not enough. A request for discovery specifically requested Victim's psychological records and included mention of possibly forty admissions to St. Vincent Hospital's psychiatric ward and twenty-four incidents of harassment, domestic violence, sexual assault, and restraining order violations reported by Victim that defense counsel knew about. Defense counsel had received seventy-two pages of police reports, detailing a pantheon of intoxicated behaviors, and a statement by the police that providing full records would be "time consuming due to the amount of contacts" that Victim had with police.

While police convenience is scant justification for shutting down discovery, we observe that Victim's psychological problems were well known to defense counsel, and the cross-examination of Victim exposed everything—a history of psychological problems, frequent treatment, and broad problems with substance abuse—all of which, Defendant wanted presented to the jury.

The testimony of the police and paramedics who responded to her 911 call corroborated her story. The police arrived at a time when Victim was in a situation of apparent and immediate peril. The police observed fresh injuries and, when the

hotel room door was opened, saw her on the floor with a broken telephone in her hand—the other part of which was in Defendant's hand. Defendant has not shown any probability of a different result, either as to what he believes should have been obtained by counsel being admissible or its effect on the outcome of the trial. Defendant failed to rebut our presumption of his attorney's competence and has failed to carry his burden of demonstrating prejudice and the likelihood of a different result had his attorney acted differently. We conclude his claim of ineffective assistance fails as a result.

**2. Granting a Continuance Because Victim Was Not Produced Until Just Before Trial Was Not an Abuse of Discretion**

The granting or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant. *State v. Sanchez*, 120 N.M. 247, 253, 901 P.2d 178, 184 (1995). The defendant must show not only that the court abused its discretion, but also that such abuse prejudiced the defendant. *State v. Nieto*, 78 N.M. 155, 157, 429 P.2d 353, 355 (1967). Early in the case, the State had been unable to find Victim. Later, she missed one interview for which she had received notice. The district court entered an order to show cause and continued the trial date as a result. Defendant does not describe any efforts independently expended on his part to ascertain the whereabouts of Victim. Defendant objected to the continuance and moved to have Victim excluded as a

9

witness. The district court denied the motion on July 14, 2008 and compelled Victim's attendance at an interview before trial. Granting a continuance under these circumstances was not an abuse of discretion, as we noted in *State v. Harper*, 2010-NMCA-055, ¶¶ 9, 11, 13, 148 N.M. 286, 235 P.3d 625, *cert. granted*, 2010-NMSC-006, 148 N.M. 584, 241 P.3d 182.

**3.      Alleged Discovery Violations**

We review the denial of a request for a mistrial for abuse of discretion. *State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131. Since the district court forestalled further testimony about Officer Herman in its entirety, Officer LeBlanc's testimony established that Officer Hidalgo was at the door of the motel room in Officer Herman's company. Officer Hidalgo testified that, upon arriving at the room's door, he heard a slapping noise coming from within and a woman crying. Contrary to Defendant's argument, the court's direct order was not violated. To the extent the jury might have drawn an inference from the fact as testified to by Officer LeBlanc, the admission of the fact was not violative of an order and in denying the motion. The court was aware of Officer Hidalgo's prospective testimony, which it stated would be allowed. Given the lack of a clear violation of the district court's order and the stated reasons for denying the mistrial as a result, we hold that no abuse of discretion occurred and affirm the district court on this issue.

## 4.       Discovery of Evidence Concerning a Prior Rape Charge

Defendant asserts that discovery violations amounted to prosecutorial misconduct that should have been sanctioned with either dismissal of charges or the exclusion of evidence. The evidence Defendant asserts should have been provided a day or two prior to trial concerns a prior allegation of rape made by Victim against him in December 2006, a little more than two months prior to the incident from which this case arose. The evidence is of two sorts: (1) police photographs taken of Victim in December, which Defendant sought to compare to photographs taken of Victim as a result of this case; and (2) evidence concerning the basis for a DNA match of him that was announced not long before trial. We look to whether (1) the State breached a duty to provide the evidence, (2) the evidence was material, and (3) Defendant was prejudiced by its suppression. *State v. Sandoval*, 99 N.M. 173, 175, 655 P.2d 1017, 1019 (1982), *abrogated on other grounds by State v. Holly*, 2009-NMSC-004, 145 N.M. 513, 201 P.3d 844.

The test for materiality is whether there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. As for determining whether the defendant has been prejudiced—the third factor—we look at whether the defense counsel's case would have been

11

improved by an earlier disclosure, or how the defense would have prepared differently for trial. *State v. Duarte*, 2007-NMCA-012, ¶ 15, 140 N.M. 930, 149 P.3d 1027 (2006). Remedies for failing to provide discovery are reviewed for an abuse of discretion. *State v. Bobbin*, 103 N.M. 375, 377, 707 P.2d 1185, 1187 (Ct. App.1985). We take each matter in turn.

**a.     Photographs**

The day before trial, Defendant moved for dismissal or exclusion of evidence based on the failure of the State to find photographs from the December incident that the police report from that time said had been taken by the investigating officer. Throughout extensive argument before the district court, Defendant maintained that photographs taken in December by a SANE nurse were inadequate to show all of the injuries received by Victim at that time and, therefore, precluded a comparison of those injuries to ones shown by the police photographs of Victim from this case. Defendant did not state what injuries might have been shown by the missing photographs, just a desire to explore the extent to which they might have been different from the SANE nurse's photographs and may have shown that Victim had received bruises in December for which Defendant would have no culpability in this case.

Defendant's problems establishing materiality and prejudice stem from his inability to effectively demonstrate the probative value of the undisclosed evidence by showing any likely difference in quality and quantity between the unavailable police photographs and what the SANE nurse documented through her examination and photographs. The district court stated its disbelief that the SANE nurse's report and photographs would not be geared toward documenting all possible injuries presented to her. Second, in a case where some December bruises may have matched those shown by the February photographs from this case, but others would not, the district court was concerned at the extent to which a comparison of bruises was material to proving that Victim was assaulted by Defendant. The district court stated its intention to allow the jury to compare photographs from December and February to see what may or may not match. The district court did not find the failure to produce the photographs to be either exculpatory or prejudicial to Defendant in light of the evidence that was produced to him by the State.

We agree with the district court that the day before trial is late for Defendant to have the hearing on motions filed some two months before and that late disclosure is to be discouraged. However, we agree with the district court that Defendant's assertion that the police photographs of any injuries existing in December would be different in scope or kind than the photographs provided by the SANE nurse are no

more than speculation. Other evidence may establish the acts of battery as opposed to the effects of Defendant's acts at any relevant time. Whether Victim exhibited other injuries than bruises, and when the photographed injuries occurred are not evidence that necessarily turns the tide in Defendant's favor as to the materiality of the police photographs versus the SANE photographs or the prejudice Defendant may have suffered by this non-disclosure. We hold that the district court did not abuse its discretion by declining to grant sanctions for the State's failure to timely produce the photographs.

**b.    DNA Evidence**

The evidence of the DNA match from the December rape case was not going to be presented as evidence by the State in this case. Defendant's only argument before the district court as to the report of the DNA match was simply that it appeared to be irregular, was material, and that its late production had hampered his preparation for trial because he wanted to establish that he had been falsely accused of rape and would use an exculpatory result to attempt to do so. Given the lack of evidence presented by either side concerning the circumstances surrounding the DNA test, save the letter announcing its result, we are unable to assess its materiality for purposes of this trial. Further, given that impeaching Victim with an incident of specific conduct (false accusation) is not susceptible to proof through extrinsic

14

evidence. Rule 11-608(B) NMRA. Defendant has not shown how he would have prepared differently for trial since, until the week before trial, there was no result, and the late evidence was both inculpatory and inadmissible. Hence, we see no prejudice to his case and affirm the district court's ruling.

**5.      Officer LeBlanc's Testimony About Seeing an Excluded Witness**

As a result of the State's inability to produce Officer Herman, he was excluded as a trial witness by the district court, and the State was instructed not to discuss anything he may have said. In a later ruling, the district court ordered that no testimony ensued that Officer Herman had done anything at the scene. On the stand, Officer LeBlanc mentioned coming to the hotel and seeing Officer Herman. Defendant maintains that this testimony was impermissible evidence; it was not. At this point, extensive discussion ensued, resulting in the court admonishing the State for "pushing the edge" of the ruling. Defendant's motion for a mistrial was denied. The district court extended its order to explicitly forbid the State from any mention of what Officer Herman did. This ruling closed the hole on what Defendant objected to and to what the court had found existed in its earlier ruling. Thus, Officer LeBlanc's testimony did not violate the ruling in place and was prevented from proceeding. The court's subsequent order was not violated.

**6.      Officer LeBlanc's Testimony as to Paramedic Hearsay**

Officer LeBlanc's testimony, as to what Victim told paramedics about being hit over the head by a whiskey bottle, was admitted over objection as a statement made for purposes of medical diagnosis. We note that the paramedic testified to the same information earlier in the trial without objection. Immediately thereafter, the court sustained an objection to the prosecutor's question about whether Victim had said anything "about the phone[.]" That statement was overruled, but no statement about what the significance of the phone may have been was solicited at that time. The same statement concerning the whiskey bottle was made to Officer LeBlanc and, when he testified to it, admitted over objection as an excited utterance. Immediately thereafter, Officer LeBlanc testified to Victim's statement that she had been hit with the telephone and prevented by Defendant from calling 911; there was no objection. Although the source of any injury (supposed bottle to the head) is relevant in that regard, we agree that being prevented from calling 911 is not, but Officer LeBlanc apparently testified that the 911 comment was made to him. No comment about the assertion's truth was made by counsel on either side. Officer Hidalgo testified to Victim's statements about what had occurred, and that testimony passed without objection. Defendant now asserts that the admission of Officer LeBlanc's testimony concerning these statements was reversible error, and we disagree.

First, we note that, by this time in the trial, Victim had already entirely abjured the idea that she had been hit with a bottle and testified that she was struck with the telephone as she tried to call 911. Second, the paramedic testified to her statement to him about the bottle without objection, and later testimony by Officer Hidalgo similarly ensued without objections. We thus believe that Officer LeBlanc's testimony is cumulative of other testimony to which Defendant did not object. Since we review the admission of evidence for an abuse of discretion, *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 8, 143 N.M. 455, 176 P.3d 1187, to agree with Defendant requires that we hold that the district court's rulings were clearly untenable or not justified by reason. We cannot do that. The paramedic described the statements made to him as part of his ascertaining the nature of Victim's injuries without objection and reasonably establishing them as statements relating to medical diagnosis. The telephone statements were apparently made as officers entered the motel room and asked what had happened. Given evidence that, upon their entry, the disconnected telephone handset was in Defendant's hand as he stood over Victim, it was also justifiable for the district court to conclude that Victim was still under the stress of the moment. The sum of the evidence indicates that no abuse of discretion occurred, and the record shows the statements to be cumulative. We affirm the admission of the statements.

**7.      Alleged Prosecutorial Misconduct Does Not Warrant Reversal**

The prosecutor's comment in closing statement—"Everyone has the right to a trial [and e]veryone has the right to say I didn't do it"—passed without objection until the end of the argument. At that time, the district court ruled that it was not a comment on Defendant's silence, declined the request to make a curative instruction, and told Defendant that he could re-emphasize the State's burden as he chose. This statement does not naturally and necessarily constitute a comment on Defendant not testifying as we required in *State v. Calvillo*, 110 N.M. 114, 119, 792 P.2d 1157, 1162 (Ct. App. 1990). The defense did not object at the time the statement was made. We have previously held, in *State v. Carmona*, that it is the defense's obligation to object at the earliest possible time so as to allow the court to act and that objecting at the end of the State's argument is too late. 84 N.M. 119, 121, 500 P.2d 204, 206 (Ct. App. 1972). Here, as in *Carmona*, Defendant's counsel stated that he did not object because he did not want to call too much attention to the statement. This does not excuse the lack of a timely objection and allows us to conclude that Defendant waived the argument. *State v. Milton*, 86 N.M. 639, 643, 526 P.2d 436, 440 (Ct. App. 1974). In its closing, Defendant clearly stated that the jury would have to "get over" the fact Defendant did not testify and stated clearly that it was his right not to do so. We see no abuse of discretion in the district court's desiring for a more timely objection that

18

might have allowed it to "clarify" the matter, nor an abuse of discretion in declining to give a curative instruction.

**8.     Proof of Prior Convictions**

Defendant directs us to nothing in the statement of facts or later argument indicating that he objected to the quality of proof concerning his two prior felony convictions that were taken by the court to support sentencing him as an habitual offender.  We hold that since each document submitted demonstrated Defendant's name and date of birth, and the New Mexico conviction also contained the same social security number, the court could consider that a prima facie case had been made establishing the prior offenses.  We rely on *State v. Smith* that the standard of proof for the evidence of conviction is a preponderance of the evidence. 2000-NMSC-005, ¶ 8, 128 N.M. 588, 995 P.2d 1030.   The Supreme Court pointed out that once the State has made a prima facie case, it is the defendant's burden to present convincing evidence to demonstrate the invalidity of the convictions.  *Id.* ¶ 10.   In the present case, Defendant failed to do so, and we affirm the enhancement of his sentence as a habitual offender.

**III.     CONCLUSION**

Defendant's convictions and sentence are affirmed.

**IT IS SO ORDERED.**

19

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**CYNTHIA A. FRY, Judge (concurring in result only)**